RICHARD L. KELLNER, SBN 171416
FRANK E. MARCHETTI, SBN 203185
KABATECK BROWN KELLNER LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071-3801
Telephone:  (213) 217-5000
Facsimile:   (213) 217-5010

DARREN T. KAPLAN (Admitted *Pro Hac Vice*)
GREGORY E. KELLER (To be admitted *Pro Hac Vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile:  (404) 876-4476

SHAWN KHORRAMI, SBN 180411
LAW OFFICES OF SHAWN KHORRAMI
14550 Haynes Street, Third Floor
Van Nuys, California 91411
Telephone: (818) 947-5111
Facsimile:  (818) 947-5121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANCED INTERNET TECHNOLOGIES, INC., a North Carolina corporation, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE, INC.,  et al, <br><br> Defendant | Case No.: 5:05-cv-02579-RMW <br><br> **E-FILING** <br><br> **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** <br><br> **Date: May 12, 2006** <br> **Time: 9:00 a.m.** <br> **Judge: Hon. Ronald M. Whyte** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION FOR CLASS CERTIFICATION ...........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.      INTRODUCTION ..............................................................................................2

II.     STATEMENT OF FACTS ..................................................................................3

    A.     Google's AdWords Program...............................................................3

    B.     Google's Agreement with the Class ....................................................5

    C.     In Breach of the AdWords Program Terms, Google Routinely Charges Advertisers for Invalid Clicks ...............................................................7

III.    ARGUMENT .....................................................................................................8

    A.     The Proposed Class Meets The Requirements For Certification Under Rule 23. ..................................................................................8

        1.     The Court Should Certify The Proposed Class Because All Four Prerequisites under Rule 23(a) have been met. ..................9

            a.     The Class Is So Numerous that Joinder is Impracticable. ...................................................................9

            b.     Common Questions of Law and Fact Exist. .....................10

            c.     The Claims are Typical. ..................................................11

            d.     The Representative Parties Will Fairly and Adequately Protect The Interests of the Class.......................................12

        2.     The Court Should Certify The Proposed Class Because One or More Grounds Under  Rule 23(b) Have Been Met.......................14

CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ballard v. Equifax Check Services, Inc.*
    186 F.R.D. 589, 594-595 (E.D.Ca. 1999) ................................................................. 18

*Blackie v. Barrack,*
    524 F.2d 891, 901 (9th Cir.1975) ..................................................................... 12, 14

*Boggs v. Divested Atomic Corp.,*
    141 F.R.D. 58, 67 (S.D.Ohio 1991) ...................................................................... 17

*Bogosian v. Gulf Oil Corp.,*
    561 F.2d 434, 456 (3d Cir.1977) ........................................................................ 18

*Brown v. Pro Football, Inc.,*
    146 F.R.D. 1 (D.D.C.1992) ............................................................................... 18

*Chamberlan v. Ford Motor Co.,*
    402 F.3d 952, 961 (9th Cir.2005) ....................................................................... 12

*Cummings v. Connell,*
    316 F.3d 886, 895 (9th Cir.2003) ....................................................................... 11

*Deposit Guaranty Nat'l Bank v. Roper,*
    445 U.S. 326, 339 (1980) ................................................................................. 20

*Eisen v. Carlisle & Jacquelin,*
    391 F.2d 555, 562 (2d Cir.1968), *class upheld on remand,* 52 F.R.D. 253 (S.D.N.Y.1971),
    *rev'd* 479 F.2d 1005 (2d Cir.1973), *vacated* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732
    (1974) (Eisen II) ........................................................................................... 16

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ......................................... 12

*Gen. Tel. Co. of the SW. v. Falcon,*
    457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ....................................... 12

*General Telephone Co.,*
    457 U.S. at 158, 102 S.Ct. at 2371 ..................................................................... 14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011, 1019 (9th Cir. 1998) ........................................................ 13, 15, 19, 20

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497, 508 (9th Cir. 1992) ...................................................................... 15

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909, 913-14 (9th Cir.1964)..................................................................... 13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
691 F.2d 1335, 1342 (9th Cir.1982) ..................................................................... 12

*In re Polypropylene Carpet Antitrust Litig.*,
996 F.Supp. 18, (N.D.Ga.1997)............................................................................ 18

*In re Providian Financial Corp. Securities Litigation*,
Master File No. C-01-3952 (CRB) ....................................................................... 16

*Keele v. Wexler*,
149 F.3d 589, 594 (7th Cir. 1998) ........................................................................ 18

*Kleiner v. First Nat. Bank of Atlanta*,
97 F.R.D. 683, 692  (N.D.Ga. 1983) .................................................................... 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507, 512 (9th Cir. 1978) ........................................................................ 15

*Local Joint Executive Bd.*,
244 F.3d 1152, 1163 (9th Cir. 2001) ............................................................... 19, 21

*Lubin v. Sybedon Corp.*,
688 F. Supp. 1425, 1461 (S.D. Cal. 1988) ........................................................... 16

*Mersay v. First Republic Corp.*,
43 F.R.D. 465, 468-69 (S.D.N.Y. 1968).............................................................. 15

*Mizera v. Google, Inc.*
CV-05-02885 RMW .............................................................................................. 6

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)........ 6, 19

*Schwartz v. Harp*,
108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ............................................................ 13

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301, 1306 (9th Cir. 1990) .................................................................... 20

*Staton v. Boeing Co.*,
327 F.3d 938, 954 (9th Cir.2003) ......................................................................... 12

*Stolz v. United Brotherhood of Carpenters & Joiners, Local Union No. 971*,
620 F. Supp. 396, 404 (D. Nev. 1985)................................................................... 15

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227, 1234 (9th Cir.1996) ......................................................................... 6

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641, 644 (N.D. Cal. 1987) .................................................................. 14

*Weinberger v. Jackson*,
   102 F.R.D. 839, 844 (N.D.Cal. 1984) ................................................................. 16

**Rules**

Fed.R.Civ.P. 23 ......................................................................................... 6, 11, 12, 13

**Other Authorities**

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*,
   7.26 (4th ed.2005).......................................................................................... 12

7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
   PRACTICE AND PROCEDURE § 1781 (2d ed.1986) ........................................ 18

California Business & Professions Code §17200, <u>Et Seq</u>..................................... 5, 14

**MOTION FOR CLASS CERTIFICATION;**
**MEMORANDUM OF POINTS AND AUTHORITIES**
CASE NO. C-05-02579-RMW

## <u>NOTICE OF MOTION FOR CLASS CERTIFICATION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2006, at 9:00a.m., or as soon thereafter as this matter may be heard before the Honorable Ronald M. Whyte of the United States District Court for the Northern District of District of California, 280 South First Street, San Jose, California, Plaintiff, Advanced Internet Technologies, Inc. ("AIT") will and hereby does move the Court for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure certifying a plaintiff class (the "Class") consisting of:

> All persons and/or entities who entered into on-line form contracts known as the "Google Inc. AdWords Program Terms" for United States advertising, and paid money to Google, Inc. for "clicks" on AdWords ads from June 24, 2001 to the present date.

Excluded from the Class are Google, Inc. ("Google"), officers and directors of Google, members of their immediate families and each of their legal representatives, heirs, successors or assigns and any entity in which Google has or has had a controlling interest.  AIT will also move the Court to appoint AIT as the Class Representative.

This motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure.  It is made on grounds that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of AIT are typical of the claims or defenses of the class; (iv) AIT will fairly and adequately protect the interests of the class; (v) common questions of law or fact predominate over individual questions; and (vi) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

This motion is supported by the following Memorandum of Points and Authorities, the Declaration of Clarence E. Briggs, the pleadings and records on file in this case, the arguments of counsel, and any other matters properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Google AdWords program permits Google's customers to purchase advertising that links the customer's website to Google's search results as displayed both on Google's own website and on hundreds of thousands of other participating websites under Google's "AdSense Program."  Advertisers then pay Google a fee every time someone clicks on their ad.

The putative class in this action is comprised of tens of thousands, if not, hundreds of thousands of advertisers who participate in Google's AdWords program by entering into on-line form contracts with Google for United States advertising.  The on-line form contracts all provide that AdWords advertisers will not be charged for "invalid clicks," which Google defines as including clicks created by "automated tools, robots or other deceptive software" and "manual clicks intended to increase [AdWords Advertisers'] advertising costs or to increase profits  for website owners hosting [AdWords customers'] ads."  Thus, the contracts that are the subject of this class action all contain substantively the same pertinent terms.

Notwithstanding Google's contractual promise not to charge its AdWords customers for invalid clicks, AdWords advertisers (such as class representative AIT) are being charged millions of dollars per annum by Google for invalid clicks.  Conservative estimates of the "invalid click" activity that is improperly charged to Google AdWords customers have been placed at anywhere from 10% to 30% of all charges.  In December 2004, Google's chief financial officer, George Reyes, characterized "click fraud" (the generic term for what Google refers to as "invalid clicks") as, "the biggest threat to the Internet economy."  Since Google claims to employ the same  computerized programs and filters  to ostensibly detect "click fraud" on a system-wide basis, Google's  breaches of its contracts involve inherently class-wide issues.

This action sets forth claims based upon  breach of contract and unfair business practices (under California Business & Professions Code §17200, Et Seq.) causes of action on behalf of all persons or entities that entered into on-line form contracts for the "Google Inc. AdWords

Program Terms" for United States advertising ("AdWords Program Terms"), and paid money to Google, Inc. for "clicks" on AdWords ads from June 24, 2001 to the present date.[1]

A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed.R.Civ.P. 23; *see also*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). This action satisfies the prerequisites for class certification under Rule 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. This action also satisfies the requirements of Rule 23(b)(3) B namely, predominance of common questions of law or fact and the superiority of a class action as a method of adjudication. Accordingly, AIT requests that the Court enter an Order: (i) certifying this action as a class action pursuant to Fed.R.Civ.P. 23; and (ii) appointing AIT as the representative of the Class.[2]

## II.    STATEMENT OF FACTS

### A.  Google's AdWords Program

Google's free Internet search engine is the most widely-used Internet search engine in the world. It provides results for hundreds of millions of user searches and covers billions of web pages each day. Google also sells a number of products and services to individuals and business, educational and governmental entities. One of the programs Google offers to its business customers, and Google's predominant source of revenue, is a keyword-triggered advertising program called "AdWords." Google has offered this program since October 2000.

---

[1]    The AdWords Program Terms specifically provide that the agreement is to be "governed by California law." Therefore, a single body of substantive state law applies to this action and the claims and defenses of the litigants. Accordingly, the application of California law to the defendant and every member of the Class will not violate the constitutional limitations on choice of law mandated by the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1 as under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

[2]    As this Court is aware, AIT's attorneys also represent a plaintiff in a related action that also sought class action certification. *Mizera v. Google, Inc.* CV-05-02885 RMW. After further consideration, plaintiffs' attorneys have decided to seek certification with only AIT as the representative plaintiff.

Google's AdWords program permits Google's advertising customers to purchase advertising that links their websites to Google's search results. Google posts the purchased advertising links on the top and right hand margins of its search engine results pages, based on the keywords that appear in user queries entered into Google's Internet search engine. Thus, Google's advertising customers make their goods or services known and available to a targeted group of potential customers -- Internet users who are conducting searches using words that are related to the advertisers' business. Google's advertising customers pay Google based on the number of Internet users who use the advertising links by clicking on them for the purpose of accessing the advertiser's website to do business with the advertiser.

Google's advertisers select the keywords that will trigger their advertisements. Thus, for example, a computer hardware retailer might select keywords such as "computer," "hard drive," "memory," and the like. Then, whenever a user enters a search string into Google's search engine containing any of these keywords that retailer's paid advertisement appears on top of or to the right of, the search results. Advertisers make bids for the key words that will trigger their advertisements. The highest bidder for a word or phrase generally finds its ad on top of the list. Advertisers then pay Google a fee every time someone clicks on their ad. Payments average approximately fifty cents per click, but can reach over $100 per click for sought-after terms valuable to advertisers.

Other internet search companies besides Google offer variants on Google's AdWords program. These programs are substantially identical to Google's in that all advertisers pay fees to the internet search company each time their ads are clicked. These programs are referred to generically as "pay-per-click".

In addition to placing the advertiser's links on the search results page, Google also places the AdWords text ads on other Web sites though Google's "AdSense Program." Under this program, other websites may join the "Google Network" and a Google computer program automatically selects advertisers' links based on the particular AdSense website's content. Again, advertisers pay Google a fee every time someone clicks on their ad as displayed on an AdSense website just as if it were displayed on Google's website. Google then pays a portion of

the fees it receives from the advertiser to the AdSense website that displayed the ad.  Google's AdSense Program broadens the reach of AdWords text ads and disburses those ads throughout the Internet in a targeted manner.  Accordingly, the AdSense Program is a vital and valuable component of Google's AdWords program.

### B.  Google's Agreement with the Class

With the exception of a small percentage of its advertisers (who would not be members of the Class plaintiff seeks to certify), all AdWords advertisers advertising within the United States enter into an on-line form contract known as the AdWords Program Terms by clicking a button.  The on-line form contract is revised from time-to-time, but have remained identical in substance throughout the Class period with respect to the terms that are at issue in this class action.  All members of the proposed Class are required to accept the newly revised versions of the Agreements in order to continue to advertise with the AdWords program.  [Declaration of Clarence E. Briggs (the "Briggs Dec."), ¶¶ 5 and 9; Exhibits "A" and "F"]

The AdWords Program Terms provide that advertisers "shall be charged based on ***actual clicks*** . . ." (emphasis added).  Further, the AdWords Program Terms provide that:

> These Google Inc. AdWords Program Terms ("Terms") are entered into by you and Google Inc. ("Google") regarding the Google AdWords Program ("Program") as further described in the Program's frequently asked questions at https://adwords.google.com/support/bin/index.py?fulldump=1 (the "FAQs") (collectively, the "Agreement").

The terms of the AdWords Program, as reflected in Google's "FAQs" (frequently asked questions) about the program and AdWords Help Center website, make clear that advertisers may not be charged for "invalid clicks," and that charges for "invalid clicks" will be refunded to the advertiser.  [Briggs Dec. ¶¶ 5-8; Exhibits "A" though "E"]

The FAQs [Briggs Dec. Exhibit "B"], which are incorporated into the AdWords Program Terms, provide as follows:

### Do I pay for every click on my ad?

With Google AdWords cost-per-click (CPC) pricing, you pay whenever someone clicks on your ad . . . See our high click

5

volume FAQ for more information about sources of legitimate clicks.

If you suspect that your ads have been affected by invalid clicks, **_see the AdWords help center to learn more about AdWords click quality._** (Emphasis added)

The AdWords Help Center which is linked to the FAQs [Briggs Dec. Exhibits "C" through "E"] provides as follows:

**What kinds of clicks does Google consider invalid?**

Some sources of invalid clicks include:

- Manual clicks intended to increase your advertising costs or to increase profits for website owners hosting your ads.
- Clicks by automated tools, robots, or other deceptive software.

We closely monitor these and other scenarios to better protect you from receiving invalid clicks.

**What does Google do when invalid clicks are detected?**

Google actively implements several click protection techniques in order to combat invalid click activity. Clicks that Google determines invalid are automatically filtered from your reports. In addition, we apply the following policies for the protection of AdWords advertisers:

- If we find that invalid clicks have escaped automatic detection, you'll receive a credit for those clicks. This credit will appear on the Billing Summary page of the My Account section in your AdWords account, labeled *Adjustment - Click Quality.*

- Any advertiser or publisher participating in invalid click activity or any related offense is subject to legal prosecution. We will also take the appropriate action on the related account.

**How will Google credit my account for invalid clicks?**

Google constantly monitors for, and strictly prohibits, invalid click activity. We work hard to maintain the integrity of our advertising program and to make sure you're being billed for legitimate clicks on your ads. If we discover that you've been charged for invalid clicks in the past two months, we'll apply credits to your account.

**MOTION FOR CLASS CERTIFICATION;**
**MEMORANDUM OF POINTS AND AUTHORITIES**
CASE NO. C-05-02579-RMW

Thus, pursuant to the AdWords Program Terms, advertisers are charged only for "actual clicks."

Moreover, the FAQs, which are specifically referenced in the on-line form AdWords Program Terms describe a distinction between invalid clicks and "legitimate clicks" and invite advertisers who suspect they have been affected by invalid clicks to "see the AdWords help center to learn more about AdWords click quality."  [Briggs Dec. Exhibit "B"]

Finally, the statements set forth in the "AdWords Help Center" also state that Google's "click protection techniques" are designed "to combat invalid click activity" and that "[c]licks that Google determines invalid are automatically filtered from your reports."  Google admits in the AdWords Help Center that it has a responsibility to detect "invalid clicks and to ensure that our advertisers are not charged for these invalid clicks."  The AdWords Help Center also states that, "If we find that invalid clicks have escaped automatic detection, you'll receive a credit for those clicks.  [Briggs Dec. Exhibits "C" through "E"]

### C.  In Breach of the AdWords Program Terms, Google Routinely Charges Advertisers for Invalid Clicks

The vast bulk of perpetrators of invalid clicks in AdWords are participants in Google's own AdSense program, who click on the text ads hosted on their own sites in order to generate fees from Google which are ultimately paid by the advertiser.   Perpetrators of invalid clicks can also exploit the nature of pay-per-click advertising in order to increase the pay-per-click fees paid by competitors and to boost the placement of their own advertisements.  [Complaint ¶21] Google is able to ascertain which "clicks" constitute "invalid clicks" [Complaint ¶ 24] but it continues to charge advertisers for "invalid clicks."  [Complaint ¶ 44]  Indeed, Google is in a unique position to detect invalid clicks that originates though its own AdSense Program since these sites are affiliates of Google and the entire process takes place within the closed-end Google network of internet links.  [Complaint ¶25]

Google, notwithstanding its representations, does not take the measures that are necessary to prevent advertisers from being charged for invalid clicks because the vast bulk of Google's revenue is derived from pay per click advertising, which is only increased by incidents of invalid

clicks.  [Complaint ¶¶ 30-34]  Moreover, Google does not take the measures that are necessary to prevent advertisers from being charged for invalid clicks because, were Google to fully screen out invalid clicks, the pervasiveness of invalid clicks in AdWords would become obvious and this would call Google's entire business model into question.

Google knows that advertisers will be charged for invalid clicks and that the advertisements it sells through the AdWords program are worth significantly less than the amount that plaintiff and the Class have bid for key words and have consequently paid to Google for clicks.  [Complaint ¶ 31]

Google represents to its advertisers that it has a system in place  to ensure that advertisers are not charged for invalid clicks, but has failed to take a number of obvious and significant measures to track or prevent invalid clicks, and fails to adequately warn its existing and potential customers about the likelihood that they will be charged for invalid clicks.  [Complaint ¶ 32]

As alleged in the Complaint, when customers are charged for invalid clicks, Google fails to (a) adequately advise them that they have been charged, and (b) refund them the overcharges that they have incurred.  [Complaint ¶33]

As alleged in the Complaint, Google has an inherent conflict of interest in preventing invalid clicks since it derives the same amount of income from each invalid click as it does from each valid click. [Complaint ¶34]

### III.    ARGUMENT

#### A.  The Proposed Class Meets The Requirements For Certification Under Rule 23.

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir.2003).  Rule 23(a) provides four prerequisites that must be satisfied to certify a proposed class: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefiting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b). In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir.1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n. 17.

However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 7.26 (4th ed.2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed.R.Civ.P. 23. *See Blackie*, 524 F.2d at 901 n. 17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 (9th Cir.2005); *see also Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

    **1.**      **The Court Should Certify The Proposed Class Because All Four Prerequisites under Rule 23(a) have been met.**

        **a.**      **The Class Is So Numerous that Joinder is Impracticable.**

The first requirement for class certification under Rule 23(a) is that the class must be so numerous that joinder of all members is impracticable. See Fed.R.Civ.P. 23(a)(1). The requirement depends on the practicality of joinder in light of the facts and circumstances of each case, and does not provide a required minimum number of class members. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir.1964). Google cannot seriously dispute that the numerosity requirement has been met in this action. While Google guards the number of AdWords advertisers who are parties to the AdWords Program Terms as a "trade secret," intuitively, the size of the proposed class numbers in the thousands, if not the hundreds of thousands. The exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) (A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23(a)(1)) (citation omitted). A class of this size makes joinder of all members impracticable, if not logistically impossible. This is particularly true where, as here, the Class Members are likely located throughout the country. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (certifying nationwide class where class members were dispersed throughout the country). Accordingly, the proposed class meets the numerosity requirement under Fed.R.Civ.P. 23(a)(1).

### b.  Common Questions of Law and Fact Exist.

Class certification also requires that questions of law or fact exist that are common to all class members and representatives. *See* Fed.R.Civ.P. 23(a)(2); *see also Hanlon.*, 150 F.3d at 1019. The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion "predominance" requirements of Rule 23(b)(3). *Id.* The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.* Even a single issue common to all members of the class may fulfill the requirement of Rule 23(a)(2). *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Defendants' alleged conduct—breaching the AdWords Program Terms by

charging the Class for invalid clicks affected all Class members in precisely the same manner but for the amount overcharged. Among the questions of law and fact common to the Class are:

a.    whether the on-line form contracts for the "Google Inc. AdWords Program Terms" for United States advertising permits Google, Inc. to charge its customers for invalid clicks;

b.    whether Google has breached the on-line form contracts for "Google Inc. AdWords Program Terms" for United States advertising by charging its customers for invalid clicks;

c.    whether Google's acts, as alleged in the Complaint, violated California Business & Professions Code §17200, <u>Et Seq.</u>;

d.    whether the members of the Class have sustained damages and, if so, the appropriate measure of damages.

This action clearly contains common questions of law and fact shared by all members of the proposed class, thereby making certification appropriate.

### c.    The Claims are Typical.

Under Rule 23(a)(3), the Court must also find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed.R.Civ.P. 23(a)(3). The requirements of typicality and commonality tend to overlap. *See General Telephone Co.*, 457 U.S. at 158, 102 S.Ct. at 2371 ("Both serve as guideposts ... as to whether under the particular circumstances the maintenance of the class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").

The typicality requirement of Rule 23(a)(3) is satisfied if the plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims asserted are based on the same legal theory. *Blackie*, 524 F.2d 909 at 905. The purpose of the "typicality" requirement is to assure that the named representative's interests align with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Generally, claims are typical if they arise from the same or similar injury, if the action is based on conduct

that is not unique to the named plaintiffs, and if other class members have been injured by the same course of conduct. *Id.* Typicality does not require that all members of the class be identically situated. *Hanlon*, 150 F.3d 1011 at 1020. Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members. *Id.*

Further, the courts have held that Rule 23(a)(3) requires only that there be no express conflict between the representative parties and the class "over the very issue in litigation" and that the representatives' "interests" are not antagonistic to those of the class." *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 468-69 (S.D.N.Y. 1968); *accord Stolz v. United Brotherhood of Carpenters & Joiners, Local Union No. 971*, 620 F. Supp. 396, 404 (D. Nev. 1985). Here, AIT and all Class members would proceed under identical legal theories. The Complaint alleges that Google breached its agreement with AIT in the same manner that it breached its identical agreements with the other members of the Class. In fact, AIT and the members of the Class were injured by the same common course of conduct on the part of Google and will employ the same evidence to prove their case. Because AIT alleges no facts or legal arguments peculiar to itself, AIT's claims are typical of those of the class members whom it seeks to represent.

        **d.**    **The Representative Parties Will Fairly and Adequately Protect The Interests of the Class.**

The representation requirement is meant to assure that the representative parties will fairly and adequately protect the interests of the class. See Fed.R.Civ.P. 23(a)(4). Constitutional due process concerns require that absent class members be afforded adequate representation. *See Hanlon*, 150 F.3d at 1020. Such representation is determined by an absence of conflict of interests, and the indication that the named plaintiffs and their counsel will prosecute the action fully on behalf of the interests of the class. *See id.*, *see also, Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted).

Both prongs of the "adequacy" test are met here. AIT is a $30 million internet hosting company that is a party to the AdWords Program Terms and has spent approximately $475,000

1   in Google's AdWords program. [Briggs Declaration" ¶¶2-4 ] On September 7, 2005, AIT

2   advised Google that, after analyzing its log files with respect to Google AdWords traffic for the

3   months of June, July and August of 2005, an "alarming percentage" of the clicks for which AIT

4   was charged were "invalid" as the term is defined in Google's AdWords Help Center. [Briggs

5   Declaration ¶¶14-15] On September 8, 2005, the "Google AdWords Team" acknowledged

6   receipt of AIT's complaint, but no further action was or has been taken by Google and no money

7   has been refunded to AIT. [Briggs Declaration ¶16]

8       In determining the adequacy of representation of a class, the emphasis has been and

9   should be placed on whether the representative's counsel is capable. *Weinberger v. Jackson*, 102

10  F.R.D. 839, 844 (N.D.Cal. 1984) (*citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d

11  Cir.1968), *class upheld on remand*, 52 F.R.D. 253 (S.D.N.Y.1971), *rev'd* 479 F.2d 1005 (2d

12  Cir.1973), *vacated* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (Eisen II)). AIT has

13  retained Chitwood Harley Harnes LLP, a firm that has extensive experience in class action

14  litigation involving both securities and consumer issues. The Chitwood firm was previously

15  appointed as lead counsel for a class in the Northern District of California in *In re Providian*

16  *Financial Corp. Securities Litigation*, Master File No. No. C-01-3952 (CRB), a case that settled

17  on the day before commencement of trial for $65 million.[3] Plaintiff's other counsel, Kabateck

18  Brown Kellner LLP and Law Offices of Shawn Khorrami also have substantial experience

19  litigating class actions in the state of California and elsewhere.[4]

20      The second requirement is also satisfied where, as here, there is a lack of antagonism

21  between the representative plaintiff and the absent class members. *Lubin v. Sybedon Corp.*, 688

22  F. Supp. 1425, 1461 (S.D. Cal. 1988); *Weinberger*, 102 F.R.D. at 844-45. Here, AIT's interest in

23  obtaining the maximum possible recovery is coextensive with, and in no way antagonistic to, the

24  interests of the members of the Class. AIT, like the members of the proposed Class, sustained

25

26

27  [3] Chitwood Harley Harnes LLP's brochure setting forth its qualifications is annexed to the
    Briggs Dec. as Exhibit "M."

28  [4] Kabateck Brown Kellner LLP's brochure setting forth its qualifications is annexed to the
    Briggs Dec. as Exhibit "N."      .

damages as a result of Google's breach of contract and unfair business practices. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2.    The Court Should Certify The Proposed Class Because One or More Grounds Under Rule 23(b) Have Been Met.

In addition to the requirements under Rule 23(a), a plaintiff must also establish that under Rule 23(b) one or more of the grounds for maintaining the suit are met, including that (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefiting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b). Here, certification is appropriate under both Rule 23(b)(1) and 23(b)(3).

Certification is appropriate under Rule 23(b)(1)(a) because the prosecution of separate actions by any of the hundreds of thousands of individual members of the class would self-evidently create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Google, particularly since any prospective relief would be in the form of a complex injunctive order. *See, e.g., Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 67 (S.D.Ohio 1991) (Threat of inconsistent adjudication was real without certifying class of residents, property owners, and lessees within six miles of radioactive materials plant; any injunctive relief would undoubtedly be in form of complex order addressing many specific features of plant operation, and it would be unlikely that two different courts would tailor remedial order in same fashion).

Class certification under Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *See* Fed.R.Civ.P. 23(b)(3) Common questions predominate in this case.

First, all of the class members are governed by the same (or substantively the same) contract terms. Thus, the issues relating to interpretation of key contract terms, the primary determinant of liability, will be common to all class members. "When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for

treatment as a class action, and breach of contract cases are routinely certified as such." *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga. 1983). *See, also*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Ballard v. Equifax Check Services, Inc.* 186 F.R.D. 589, 594-595 (E.D.Ca. 1999) (claims arising from receipt by class members of identical form collection letters presented common questions of law and fact pursuant Fed.R.Civ.P. 23(b)(3)).

Second, Google asserts that it attempts to filter and prevent "invalid" clicks on a global and uniform basis across its system. [*See*, Briggs Dec. Exhibits "C" and "H"] Thus, Google's failure to implement measures to prevent invalid clicks, or to prevent customers from being charged for invalid clicks, raises only factual and legal issues that will be common to all class members. These issues will be central to the breach of contract and on the unfair business practices claims.

Google may argue that the extent of damage suffered by each class member may differ. The existence of such damage questions, however, does not prevent class certification. "[I]t uniformly has been held that differences among the members [of a class] as to the amount of damages incurred does not mean that a class action would be inappropriate." 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1781 (2d ed.1986) (collecting cases); see , e.g., *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977) (noting that where proving damages is a mechanical task, "the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate"); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1 (D.D.C.1992) (finding a proposed damages formula, based on individual contracts entered into by various plaintiff, adequate to calculate antitrust damages); *In re Polypropylene Carpet Antitrust Litig.*, 996 F.Supp. 18, (N.D.Ga.1997) (Appel, Chitwood & Harley for the proposed class) (permitting class certification in an antitrust price-fixing case where the plaintiffs proposed to use regression analysis to estimate class members' damages). Damages can be easily determined from Google's own records and logs of internet traffic, and will not be the predominant questions that determine the outcome of this litigation. Those questions – the terms of the contractual relationship and Google's failure to act in breach of that

contract and in violation of the California statutes – are common to the class and will predominate in the action.

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." The superiority inquiry turns on whether the objectives of the class action procedure will be achieved in the particular case, along with a comparative evaluation of alternative mechanisms of dispute resolution. *Hanlon*, 150 F.3d at 1022. The provision provides a non-exhaustive list of factors to be considered in determining whether a class action is superior to other methods of adjudication:

> The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

None of these factors under Rule 23(b)(3) weigh against class certification. The class members' interests do not appear to be better served by litigating separate actions. Only a handful of individual actions against Google arising from overcharges for invalid clicks are currently pending out of the hundreds of thousands of class members affected. In addition, for a significant majority of class members, if they do not proceed as a class, they may be unable to litigate their claims individually because of the disparity between litigation costs and what plaintiffs hope to recover. *See, Local Joint Executive Bd.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. at 809.

Here, class certification would promote judicial efficiency by permitting common claims and issues to be tried once with a binding effect on all parties. Certification would facilitate settlement by permitting agreements which may potentially bind all parties. Most importantly, class certification is the only way to afford relief to those whose claims are too small to justify

individual lawsuits. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). In

*Hanlon*, the Ninth Circuit concluded that:

> Even if efficacious, [separate actions] would prove uneconomic for potential plaintiffs. . . . Litigation costs would dwarf potential recovery. . . . In this sense, the proposed class action is paradigmatic. A fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure . . . Thus it appears to be in the interest of the plaintiffs to concentrate the claims in the class action.

*Hanlon*, 150 F.3d at 1023.

AIT knows of no difficulty that will be encountered in managing this case that would

preclude its maintenance as a class action. Management difficulties are of significance only if

they make the class action less fair and efficient than other available techniques. *Six Mexican*

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990). The mere possibility

of problems is not grounds for denying class certification. *Id.* at 1306.

The only potential difficulty in managing this case will be calculating the amount of each

class members' overcharges for invalid clicks. However, since the criteria for determining

invalid clicks would be the same for each member of the class, the calculation can be performed

using Google's own records of charges and extracting the charges that were the result of invalid

clicks. The calculation in question would be no more complex than those routinely done in

"wage-and-hour" cases, which are routinely certified for class action treatment in both the state

and federal courts. As described by the Ninth Circuit in such a case:

> Individualized issues are few, and most of them are likely to be relatively easy. For example, the damages for individual class members will entail a straightforward calculation of which days and how many hours they would have worked, and how much they would have earned in tips. Because dealers' tips were counted and divided in the casino cashier's cage, Sands has detailed written records of the tips employees earned in the past. Because Sands required its dealers to pool tips, there is no variation in tip earnings based on individual performance. We recognize that there may be some variation among the individual employees, as well as some potential difficulty in proof, in demonstrating that they would have worked on July 4th. But given the number and importance of the

common issues, we do not believe that this variation is enough to defeat predominance under Rule 23(b)(3).

*Local Joint Executive Bd.*, 244 F.3d at 1163.

The class action device is, without question, the only plausible mechanism to obtain relief for the advertisers in Google's AdWords program.   Thus, the "superiority" requirement of Rule 23(b) is satisfied.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant its motion to certify the proposed class and grant such other and further relief as the Court deems just and proper.

DATED:        March 6, 2006        Respectfully submitted,

CHITWOOD HARLEY HARNES LLP


By:  S/Darren T. Kaplan_____
        Darren T. Kaplan (Admitted *pro hac vice*)
And KABATECK BROWN KELLNER LLP and LAW OFFICES OF SHAWN KHORRAMI, Attorneys for Plaintiff

**MOTION FOR CLASS CERTIFICATION;**
**MEMORANDUM OF POINTS AND AUTHORITIES**
CASE NO. C-05-02579-RMW