RICHARD L. KELLNER, SBN 171416
FRANK E. MARCHETTI, SBN 203185
KABATECK BROWN KELLNER LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071-3801
Telephone:  (213) 217-5000
Facsimile:  (213) 217-5010

DARREN T. KAPLAN (Admitted *Pro Hac Vice*)
GREGORY E. KELLER (To be admitted *Pro Hac Vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 873-3900
Facsimile:  (404) 876-4476

SHAWN KHORRAMI, SBN 180411
LAW OFFICES OF SHAWN KHORRAMI
14550 Haynes Street, Third Floor
Van Nuys, California 91411
Telephone:  (818) 947-5111
Facsimile:  (818) 947-5121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANCED INTERNET TECHNOLOGIES, INC., a North Carolina corporation, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>GOOGLE, INC.,  a Delaware Corporation, and DOES 1 through 100, Inclusive,<br><br>    Defendants. | Case No. C 05 02579  RMW<br><br>Consolidated with<br>Case No. C 05 02885 RMW<br><br>**DECLARATION OF DARREN T. KAPLAN IN SUPPORT OF PLAINTIFF ADVANCED INTERNET TECHNOLOGIES,  INC.'S ADMINISTRATIVE MOTION TO FILE SUPPLEMENTARY MATERIAL IN OPPOSITION TO DEFENDANT GOOGLE, INC.'S MOTION TO STAY**<br><br>Judge:  Hon. Ronald M. Whyte<br><br>Date Complaint Filed:    June 24, 2005<br><br>Trial Date:  None set |
| STEVE MIZERA, an Individual, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>GOOGLE, INC.,  a Delaware Corporation, and DOES 1 through 100, Inclusive,<br><br>    Defendants. | |

DECLARATION OF DARREN T. KAPLAN IN SUPPORT OF
PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE SUPPLEMENTARY MATERIAL
IN OPPOSITION TO DEFENDANT GOOGLE, INC.'S MOTION TO STAY
Case No. C 05 02579 RMW

Dockets.Justia.com

I, Darren T. Kaplan declare the following to be true:

1.    I am an attorney licensed to practice in the States of New York, Connecticut and Georgia and am admitted *pro hac vice* in this action.  I am a partner in the law firm of Chitwood Harley Harnes LLP, counsel for plaintiff Advanced Internet Technologies, Inc.  ("AIT") in these coordinated actions.  I make this declaration of my own personal knowledge, and if called to do so, I would testify to these facts under oath.

2.    Attached hereto as Exhibit "1" is a true and correct copy of the transcript of the hearing on AIT's motion to intervene in the action against Google currently pending in the Circuit Court of Miller County Arkansas (the "Arkansas Action") as took place on March 14, 2006.

3.    Attached hereto as Exhibit "2" is a true and correct copy of a March 31, 2006 letter from the Hon. Joe Griffin, the judge in the Arkansas Action, advising the litigants that he was denying AIT's motion to intervene as untimely.

4.    Attached hereto as Exhibit "3" is a true and correct copy of a declaration by AIT's local counsel in the Arkansas Action dated April 3, 2006.

5.    On April 3, 2006, I telephoned David Silbert, counsel for Google, and he consented to AIT's filing of a motion to file supplementary material while reserving his right to oppose the relief sought or otherwise make his own filing as permitted by the local rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 3, 2006 in Atlanta, Georgia.

        /s/ Darren T. Kaplan
        DARREN T. KAPLAN

1

**EXHIBIT "1"**

IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

CIVIL DIVISION ONE

LANE'S GIFTS AND COLLECTIBLES, L.L.C.
AND U. S. CITIZENS FOR FAIR CREDIT CARD
TERMS, INC., INDIVIDUALLY AND AS CLASS
REPRESENTATIVES ON BEHALF OF ALL
SIMILARLY SITUATED PERSONS,                      PLAINTIFFS

NO.   CV-2005-052-1

V

YAHOO! INC., OVERTURE SERVICES, INC.,
TIME WARNER, INC., AMERICA ONLINE, INC.,
NETSCAPE COMMUNICATIONS CORPORATION,
ASK JEEVES, INC., BUENA VISTA INTERNET
GROUP D/B/A GO.COM, GOOGLE, INC., LYCOS,
INC., LOOKSMART, LTD., AND MIVA, INC.          DEFENDANTS

---

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE JOE GRIFFIN, CIRCUIT JUDGE

ON

March 14, 2006

Jewell Arthur, CCR
Official Court Reporter
7105 Goldfinch
Texarkana, Texas 75501

1                                      INDEX

2   Mr. Carter on Advanced Internet Technology         Page    8

3   Mr. Crass on Behalf of Plaintiffs                          21

4   Mr. Silbert on Behalf of Google                            30

5   Mr. Carter on Behalf Advanced Technology                   36

6

7   Court's Rulings                                            41

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

CIVIL DIVISION ONE

LANE'S GIFTS AND COLLECTIBLES, L.L.C.
AND U. S. CITIZENS FOR FAIR CREDIT CARD
TERMS, INC., INDIVIDUALLY AND AS CLASS
REPRESENTATIVES ON BEHALF OF ALL
SIMILARLY SITUATED PERSONS,                          PLAINTIFFS

NO.   CV-2005-052-1

V

YAHOO! INC., OVERTURE SERVICES, INC.,
TIME WARNER, INC., AMERICA ONLINE, INC.,
NETSCAPE COMMUNICATIONS CORPORATION,
ASK JEEVES, INC., BUENA VISTA INTERNET
GROUP D/B/A GO.COM, GOOGLE, INC., LYCOS,
INC., LOOKSMART, LTD., AND MIVA, INC.             DEFENDANTS

---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

On this 14th day of March, 2006, the above styled cause

comes on to be heard before the Honorable Joe E. Griffin,

Circuit Judge, in Texarkana, Miller County, Arkansas.

APPEARANCES:

ON BEHALF OF PLAINTIFFS:        Mr. John C. Goodson
                                Mr. Matt Keil
                                Mr. Shorty Barrett
                                Keil & Goodson
                                611 Pecan
                                Texarkana, Arkansas 71854

                                Mr. Phillip N. Cockrell
                                Mr. Jim C. Wyly
                                Patton, Roberts, McWiliams
                                   & Capshaw, LLP
                                P. O. Box 6128
                                Texarkana, Texas 75505

```
                                  Mr. Kevin A. Crass
                                  Friday, Eldredge & Clark, LLP
                                  2000 Regions Center
                                  400 West Capital
                                  Little Rock, Arkansas 72201

                                  Mr. James M. Pratt, Jr.
                                  Attorney at Law
                                  144 Washington St. NW
                                  Camden, Arkansas 71701

ON BEHALF OF DEFENDANTS:          Mr. Randall D. Goodwin
YAHOO! & OVERTURE:                Crisp, Boyd, Poff, Schubert
                                     & Burgess, LLP
                                  2301 Moores Lane
                                  Texarkana, Texas 75505-6297

ON BEHALF OF AOL &                Mr. Lance Lee
TIME WARNER, INC.:                Young, Pickett & Lee
                                  4122 Texas Boulevard
                                  Texarkana, Texas 75503

ON BEHALF OF GOOGLE, INC.         Ms. Jennifer Haltom Doan
& ASK JEEVES:                     Mr. John Perkins
                                  Haltom & Doan
                                  6500 N. Summerhill Road
                                  Suite 1A
                                  Texarkana, Texas 75505-6227

                                  Mr. David Silbert
                                  Keker & Van Nest, LLP
                                  710 Sansome Street
                                  San Francisco, California 94111

ON BEHALF OF BUENA VISTA:         Ms. Beth M. Deere
                                  Williams & Anderson, PLC
                                  111 Center Street
                                  22nd Floor
                                  Little Rock, Arkansas 72201

ON BEHALF OF LOOKSMART:           Mr. Alan Harrel
                                  Atchley, Russell, Waldrop
                                     & Hlavinka, LLP
                                  1710 Moores Lane
                                  Texarkana, Texas 75505-5517
```

ON BEHALF OF MIVA:                      Mr. Wren L. Autrey
                                        Autrey, Autrey & Stewart
                                        501 East Sixth Street
                                        Texarkana, Arkansas 71854

ON BEHALF OF ADVANCED                   Mr. W. David Carter
INTERNET TECHNOLOGIES, INC.             Mr. John R. Mercy
                                        Mercy, Carter & Tidwell, LLC
                                        1724 Galleria Oaks Drive
                                        Texarkana, Texas 75503

                                        Mr. Brian Kabateck
                                        Kabateck, Brown & Kellner, LLP
                                        350 South Grand Avenue
                                        39th Floor
                                        Los Angeles, California 90071

           WHEREUPON, the parties announced ready, and the following

testimony and evidence is adduced, to-wit:

                              *******

1                       PROCEEDINGS

2        THE COURT:  Good morning, Counsel.  I trust you all

3   feel like I do.  I'd rather be doing something else today

4   in light of the weather we're having.

5        I think Jodi probably took care of some preliminary

6   matters making sure, if you haven't given her some

7   information concerning name, address, and phone number,

8   you got that taken care of.

9        Counsel, as I understand, the matter that we have

10   before the Court today is the motion to intervene by a

11   new party Advanced Internet Technologies, Inc., and the

12   Court will conduct a hearing on the motion today and

13   hopefully get a response back to counsel, depending on

14   how the hearing goes today and what I hear and how

15   comfortable the Court is with the information provided to

16   you, give you an answer today or within the next, or

17   inside of a week is my intention.

18        Other hearings that I know that we definitely have

19   coming up, following the Court's previous order of

20   staying and abating the proceedings, we have a date set I

21   believe April 3rd regarding the plaintiffs and separate

22   Defendant Google and maybe a couple other defendants.

23   And we are, as of last Friday, on the original order for

24   stay or abatement that order expired last Friday on the

25   10th.  As you probably are aware at this time, the Court

1   was presented with a motion and an order was signed last

2   week extending that stay as a result of the announcement

3   by Defendant Google and the plaintiffs that a tentative

4   settlement, or settlement, had been reached, which they

5   plan to present at the hearing on April 3rd.  And because

6   of that announcement the Court did stay the proceedings

7   until it has an opportunity to consider that.

8        I will put you on notice, of course, as you already

9   are well aware, that as a result of the stay that has

10  thrown our original scheduling order off course and the

11  extended stay will continue to do so.  I would also, I

12  mentioned to a couple of the defense counsel this morning

13  earlier, that subsequent to our original conference and

14  the hearing concerning a scheduling order at the end of

15  last year, this Court has advised, I think counsel who

16  were present on that day, this Court's criminal docket

17  that existed at that time and since that time it has

18  grown and I have a number of murder and or capital murder

19  cases set.  I start one at the end of this month and I

20  have another one in the month of May.  In April I have

21  two, two week nursing home cases scheduled.  I don't know

22  those, there is always a possibility of settlement, but

23  anytime you block out your schedule for two weeks you got

24  to set it there till counsel tells you otherwise.  And I

25  have six separate defendants in one capital murder.  I

1    have two defendants in another capital murder.  And we

2    operate under the one year speedy trial, unless motions

3    for continuance are granted, so that's what I am facing.

4        So those extra filings will have something to do

5    with our scheduling order when we pick up.  And also, it

6    will enter into any, some of the decisions that the Court

7    will obviously be confronted with in the near future.  So

8    I just wanted to make you aware of that, since I have a

9    number of you present here at one time today and I can

10   tell you that from the bench without having to send you a

11   written communication.

12       And so that with that information in mind, you can

13   probably expect to hear some word from me in the next

14   couple of weeks, or near future, concerning what I think

15   about how our schedule will proceed, so just let you know

16   that.

17       Okay, Mr. Carter, I think you are local counsel for

18   Advanced Internet Technology.  Are you ready to proceed

19   on your motion to intervene today?

20       MR. CARTER:  We are, Your Honor.

21       THE COURT:  And are the Plaintiffs ready to proceed

22   on their response?

23       MR. CRASS:  Yes, Your Honor.

24       THE COURT:  All right.  Mr. Carter.

25       MR. CARTER:  David Carter, along with John Mercy and

1       Brian Kabateck are here today, Your Honor, on behalf of

2       Advanced Internet Technologies, Inc., which is the

3       movant.  I will refer to it as AIT for purposes of the

4       hearing and our briefing.

5           I would like to begin by thanking the Court for

6       scheduling this hearing on short notice, particularly in

7       light of the Court's aforesaid described busy schedule.

8       And I will try to move it along as quickly as I can.

9           We, of course, are asking that AIT intervene as to

10      Defendant Google pursuant to Rule 24 of the Arkansas

11      Rules of Civil Procedure, either as a matter of right

12      under 24 (a) or permissively under Rule 24 (b).

13          What I would like to do, Your Honor, subject to your

14      approval, is give you a little bit of background in terms

15      of who AIT is, how we got here, some litigation that has

16      been in progress, and then address the specific

17      requirements of Rule 24 and why we feel we meet them.

18          AIT is an internet posting firm based out of North

19      Carolina.  We host, I believe in excess of two hundred

20      thousand web sites, a lot of them are household names,

21      TimeWarner, Microsoft.  Given the Court's fondness for

22      pizza and southern gospel, I am pleased to report we host

23      web sites for Pizza Hut and the Oakridge Boys, among

24      others.

25          We have an annual revenue of some thirty million

1   dollars, and like a number of businesses across the

2   country, we contracted with Google for click advertising.

3   Our investigation indicates that Google overcharged us

4   for fraudulent clicks in an amount in excess of a quarter

5   of a million dollars.  So we feel we have a lot at stake.

6       Why are we here.  As the Court is aware, the

7   plaintiffs in this case and Google have engaged in the

8   mediation process in recent months.  AIT has attempted

9   for some time to gain access to the mediation process and

10  have been refused, politely refused, but refused.  Last

11  week, as the Court is aware, the plaintiffs and Google

12  announced that they have reached a tentative settlement

13  agreement and would be seeking approval from this Court

14  of that agreement.  We renewed our request in light of

15  that information for access to the process in terms of

16  the settlement, and I think some of that correspondence

17  is attached to our reply that was filed yesterday.  We

18  are told that the terms of the settlement are

19  confidential and they were not related to us.  At the

20  same time we were being told that the terms were

21  confidential, both Google and the plaintiffs have been

22  providing information to the media at least expressing or

23  discussing generalities about the settlement and in

24  general what it entails.  So because AIT has a

25  significant interest, that I described in terms of claims

1     for overcharges, and because our interests are

2     significantly affected by the litigation and by the

3     settlement process, and only after repeated refusals for

4     the information about the settlement, we felt it

5     necessary to file the motion to intervene.

6         AIT, Your Honor, is not a newcomer to this

7     litigation.  I know the Court is aware of situations

8     where a deal in a class action is struck and parties

9     appear out of thin air, you know, with a problem with the

10    settlement.  That is not what we have here.  AIT has had

11    its own class action pending in the United States

12    District Court in California for some time.  They filed

13    the suit there because or they are in the suit there.  It

14    was originally filed by another party and then they

15    assumed the role of class representative, but the case

16    was filed in California because the agreements between

17    Google and its customers has a forum selection clause

18    that requires litigation to take place there.  That has

19    been raised by Google in its motion to dismiss that is

20    pending before the Court, which I understand the Court

21    has not yet heard.

22        AIT has been represented in that litigation by the

23    firms of Chitwood, Harley, Harnes and Kabateck, Brown,

24    Kellner, both very experienced, very respected class

25    action law firms that have litigated, tried, settled

1    consumer class actions all over the country.  I think we

2    attached some information on the firms in the reply we

3    filed yesterday.

4        The AIT case in California has survived the motion

5    to dismiss process, putting Google in the position to

6    have to defend on the merits.  There has been extensive

7    discovery.  AIT has acquired more than a quarter of a

8    million pages of documents through discovery from Google

9    in that case.  They have deposed key employees of Google

10   with respect to fraudulent clicks and that process.  And

11   there is currently a hearing scheduled on AIT's motion to

12   certify class in May, a couple months down the road.

13       Now in this case, as the Court is well aware, there

14   was a jurisdictional battle for some time with the

15   removal to Judge Barnes' court.  As I understand it,

16   dispositive motions or motions to dismiss have not yet

17   been heard.  From what I can tell, there has apparently

18   been no discovery between plaintiffs and Google.  And in

19   fact those parties, as the Court mentioned earlier, some

20   time ago asked that the case be abated so that they

21   could, in fact, discuss settlement.

22       So I want the Court to be aware that AIT is not

23   appearing here like barnyard animals, from the story of

24   the Little Red Hen, to try to reap the benefits of

25   somebody else's efforts.  We have been litigating the

 1    case vigorously in California.  We are here because of

 2    our significant business and monetary interest.  And we

 3    spend a lot of money and energy to maximize the value of

 4    the fraudulent click claims against Google.  We are armed

 5    with information from that case that only formal

 6    discovery can give in the form of these documents and

 7    testimony.  We have feel we have leverage with this

 8    pending class action motion to certify the class that is

 9    now set in May in California.  Yet despite our interest

10    in the litigation, despite our ability and willingness to

11    use this knowledge, this information, and this leverage

12    to maximize the value of the claims against Google, the

13    plaintiffs and Google have effectively blocked us from

14    that process in this case and here we are.

15       And it is not just AIT and AIT's lawyers that are

16    expressing concern about this proposed settlement, at

17    least as plaintiffs and Google have described it in the

18    press accounts that have come out in the last week.  As

19    the Court is aware, this proposed settlement would seek

20    to resolve the class' claims over several years, I think

21    going back to 2002 or so.  And we attached to our reply

22    an industry research report from I believe Piper Jaffray

23    that notes that the ninety million dollar cap on the

24    total value of this reported proposed settlement is less

25    than one percent of Google's annual revenue from click

1       ads, based on last years figures, less than one percent.

2       Another industry study that is referenced in our reply

3       estimates that Google's click overcharge in 2005 alone

4       were between 480,000,000 to 1.7 billion.  Industry

5       analysts, who are already blogging and writing on it, are

6       concluding that Google is getting out on the cheap.

7           AIT and the firms that represented them have been

8       contacted by dozens of significant Google customers that

9       have concerns about the settlement.  And the concerns,

10      Your Honor, are not limited to the reported dollar value

11      of the settlement.  As it has been reported by the

12      parties, this proposed settlement apparently won't

13      provide any relief for a lot of Google customers.  And I

14      will need to explain that.

15          Under the agreements, the advertising agreements

16      between Google and its customers, the customer has sixty

17      days from the time it gets its bill to object and say you

18      have overcharged me.  Under this proposed settlement as

19      they are reporting it, Google has agreed to waive this

20      sixty day time limit.  Now it is my understanding

21      California law, which by agreement would govern, that

22      that sixty day time period is not enforceable anyway so

23      Google is not really giving up anything the law wouldn't

24      take from them anyway.  But for customers like AIT, which

25      I will represent to the Court did look at its bills, did

1   contact Google within sixty days and say you have

2   overcharged us, they have a right to a credit.  They have

3   a right for money not to have ever left their pocket.

4   And the proposed settlement apparently doesn't give those

5   Google customers anything it doesn't already have, so

6   that's another concern.

7       And as Your Honor is aware, the scrutiny from the

8   industry, from consumers on this settlement is going to

9   be intense.  And we feel it is important for the benefit

10  of the class and for the benefit of this Court, quite

11  frankly, which has to rigorously review whatever

12  settlement is proposed, that if there is a party with a

13  significant interest that complies with Rule 24 that

14  might be impaired by the disposition of this case that

15  they should be allowed to intervene.  We have been, the

16  only party that has served us with an opposition to the

17  motion to intervene are the plaintiffs, or it may have

18  been filed this morning, but we have not received

19  opposition from any of the other parties.

20      So with that background in mind let me turn to the

21  requirements of Rule 24.  As Your Honor is aware, there

22  are two types of intervention provided for in the rule,

23  intervention as a matter of right and permissive

24  intervention and I will address intervention as a matter

25  of right first.

1       The parties agree, Your Honor, in the briefing on

2   what the requirements are for invention as a matter of

3   right.  We basically have to show three things.  First,

4   AIT must have a recognized interest in the subject matter

5   of this suit and clearly we do.  They don't even oppose

6   that in the briefing.  We are a Google click ad customer.

7   We have claims that we were overcharged for fraudulent

8   clicks for more than $250,000.  And even plaintiffs in

9   their briefing say that AIT is a member of the class.  So

10  do we have an interest in the subject matter of the

11  litigation, clearly we do.

12      The second requirement under Rule 24 (a) is that

13  this interest must be an interest that might be impaired

14  by disposition of the suit.  And again, Your Honor, with

15  the background that I have provided the Court, there is

16  no question that our interest might be impaired by

17  disposition of the case.  We haven't seen the paper on

18  the settlement.  We don't know its terms.  And until we

19  do, we don't know for sure if we are a member of the

20  class, as it will be defined.  And I am certainly not

21  saying anybody has misrepresented that, we just haven't

22  seen it.

23      Secondly, if your Honor denies our motion to

24  intervene under some Arkansas Supreme Court opinions,

25  specifically the Haberman and Ballard opinions.  There

1     are strong indications that we won't have standing to

2     appeal any order that this Court enters approving

3     settlement, and that is in and of itself a substantial

4     impairment to our interest.

5         And then finally, Your Honor, disposition of this

6     case could shut down or own litigation in California.  In

7     fact, Google has already filed in that case a motion to

8     stay the federal case citing the tentative settlement

9     here in Arkansas.  So there is no real question that this

10    case being disposed of, particularly without us being

11    allowed to intervene, is going to impair our interest.

12        The third requirement for intervention as a matter

13    of right is that AIT's interest isn't being adequately

14    represented by existing parties.  Now I am going to stop

15    right here and make sure that the Court understands that

16    nothing I have said, nothing I will say is meant to imply

17    that the attorneys and the firms representing the

18    plaintiffs in this case are not very competent, not very

19    conscientious, very able attorneys.  I have been in

20    litigation.  I have been in class action litigation with

21    every firm that is represented in this courtroom today

22    and they are good lawyers.  They are also my friends, but

23    the real issue is not how good the lawyers are.  The

24    issue is whether the parties, whether Lane's Gifts and

25    Caulfield Investigations are adequately representing our

1    interests, AIT's interest.  And on this point, Your

2    Honor, it is important to note, as we did in our

3    briefing, that we don't have to prove that Lane's and

4    Caulfield's interests are adverse to ours.

5        Under the Little Rock School District case cited in

6    our brief, for purposes of whether or not we should be

7    allowed to intervene, we need only make a minimal showing

8    that their representation may not be adequate for us.  So

9    with that standard in mind, I will address the

10   representation issue.

11       Lane's, as the Court is well aware, is a retail

12   store here in Texarkana that has a mail order business.

13   Caulfield Investigations, at least to my understanding,

14   is a mom and pop investigation service down in Florida.

15   AIT, as I mentioned, hosts over two hundred thousand web

16   sites.  Our operations, Your Honor, include the filtering

17   of extraneous e-mail traffic, which is a process very

18   similar to what we are dealing with in screening

19   fraudulent clicks.  So it is not just that we are a

20   bigger company or that we consider ourselves more

21   sophisticated.  We have a unique level of understanding

22   about the technology involved because it is very close to

23   what we deal with on a day to day basis.

24       More importantly, Lane's and Caulfield don't have

25   the benefit of this formal discovery.  We have some

1       270,000 pages of Google documents.  They don't have the

2       leverage AIT holds in the form of a pending motion to

3       certify the class.  And lastly, and I mentioned this

4       earlier, AIT and many other  Google customers fall into

5       this category of customers who said hey within sixty days

6       there is something wrong with my bill and you overcharged

7       me.  And as reported, the folks that fall into that

8       category don't get anything more than they had before

9       this action was filed.  In fact, for those customers who

10      would be entitled to a credit on their bill, in other

11      words not to ever have to pay for the overcharges in the

12      first place, and particularly for folks like AIT, who

13      have chosen not to do business with Google anymore, the

14      proposed settlement, which just would give a credit to

15      those people for future advertising with Google, puts

16      them in a worse position than they are without the

17      lawsuit.

18          So I raise that again, Your Honor, because it is

19      completely germane to the question of whether we made

20      this minimal showing that Lane's and Caulfields may not

21      adequately represent the interest of those folks,

22      including AIT.  So have we made that showing, we think we

23      have.  The response filed by the plaintiff says that

24      despite our interest and prejudice, that I have already

25      described, we should simply just object to the settlement

1        or opt out.  We have cited the cases, particularly the

2        MTBE litigation case in our brief that points out that

3        the right to opt out doesn't establish adequate

4        representation, and even if we have an opt out provision

5        in this settlement, and we don't know that yet, there is

6        some question about whether there is even going to have

7        to be notice and opt out provisions because under Rule 23

8        (c) of the Arkansas Rules of Civil Procedure, if there is

9        not monetary relief, as least as reported that's what we

10       are looking at, there doesn't have to be a notice

11       requirement.

12           So, Your Honor, we feel that the only meaningful way

13       to adequately protect AIT's interest is to allow us to

14       intervene.  We think we have clearly shown the three

15       requirements that give rise to intervention as a matter

16       of right, our interest, impairment of that interest, and

17       we may not be adequately represented by the existing

18       plaintiffs.

19           However if Your Honor disagrees, Rule 24 also

20       provides for permissive intervention.  So if for whatever

21       reason you feel we have not met all three of those

22       requirements and intervention as a matter of right is not

23       in order, you can still allow permissive intervention

24       under Rule 24 (b), the only requirement being that there

25       be common questions of law or fact between our claims and

1     those in the main action, which for all those reasons I

2     previously discussed they do.  I don't think there is any

3     dispute on that.

4         There has been some indication in the plaintiff's

5     response that if we are allowed to intervene there is

6     going to be a delay.  And it may, Your Honor, take longer

7     to achieve an ultimate settlement or wrap things up if we

8     are allowed into the process.  But quite frankly, we

9     would submit that with what is at stake, both from the

10    number of businesses affected by this case and this

11    proposed settlement coast to coast, the amount of damages

12    sustained by the class, the amount of money Google is

13    making off of the click ads, and the level of scrutiny

14    that is going to be brought done on any settlement that

15    is ultimately reached and considered by the Court, it is

16    more important that the parties reach an adequate

17    settlement than it is for them to reach a quick

18    settlement.  And that's why we feel that it is entirely

19    appropriate for us to intervene into the case to protect

20    our interest and interest of those similarly situated.

21    Does the Court have any questions?

22        THE COURT:  Not at this time, Mr. Carter.  Thank

23    you.

24        MR. CRASS:  Your Honor, may it please the Court, my

25    name is Kevin Crass of Friday, Eldredge and Clark firm.

22

1     It is my privilege today to speak on behalf of plaintiffs

2     and plaintiff's counsel.  I won't lengthen the record

3     with introducing all the co-counsel, but the Court is

4     familiar with them.

5         As the Court knows from this case and other cases,

6     the progression of a class action case is different than

7     a case involving a single plaintiff or even multiparty

8     litigation and this case has sort of followed that

9     progression or pattern.  There is fight over whether it

10    is in state court or federal court.  Once that is

11    resolved, there is a fight over the discovery is it

12    limited to merits, I mean is it limited to class

13    certification or does it include merits.  There was a

14    fight over a protective order.  There are appeals about

15    the protective order, petitions for extraordinary writs,

16    all of which we have had in this case.  And again as part

17    of this progression, we have had in this case what I

18    think is unusual to other cases, and that is there is a

19    look toward, a focus on is there a business solution that

20    is in the best interest of the class that can be

21    addressed in the course of the litigation before you

22    fight all the battles that have to be fought, before you

23    get to a decision on a contested class action motion,

24    such as the one out in California and the appeal on that.

25        This Court ordered at least Google and one other

1    party and the plaintiffs to mediation.  That was

2    successful, but it is not successful in a final point,

3    Your Honor, for a lot of reasons.  The Court is

4    ultimately going to have approve whatever settlement is

5    presented to the Court.  But I would say to the Court, on

6    behalf of the plaintiffs and as an officer of the court,

7    we do not have an agreement that is yet ready to present

8    to the Court.

9        We entered into a set of terms and conditions with

10    Google subsequent to the mediation.  We are working

11    feverishly to get it in a position to present to the

12    Court and to have it heard in April.  But my view the

13    motion to intervene is, in addition to being unwarranted

14    and supported by law, it's premature.  I understand their

15    anxiety about the timing and the timing is significant.

16    We were in California on the 9th and 10th, I believe of

17    February.  They filed their motion February the 17th.  At

18    that point we did not have an agreement that we

19    ultimately reached, if I recall the timing correctly.

20        The motion to intervene, in our view, is

21    unnecessary.  It's premature.  It is not justified by the

22    facts or even the law as Mr. Carter set out.  Now why do

23    I say that.  AIT offers three reasons really in their

24    brief as to why intervention is appropriate.  It all

25    comes down, Your Honor, to whether or not  there has been

24

1     a showing that plaintiff's counsel in this case and

2     plaintiffs do not adequately represent the interest of

3     the rest of the class, including AIT.  And AIT offers

4     basically three reasons in their initial brief.  They

5     added a fourth last night with a filing of a reply brief,

6     that most of us just saw this morning.

7         But the three reasons are that the plaintiffs are

8     small businesses with little or no expertise in internet

9     technology, that there is a forum selection clause that

10    weakens the Arkansas plaintiffs' claims, and that the

11    California plaintiff wasn't allowed to participate in

12    mediation.  The fourth reason they added today, Your

13    Honor, is that what is really needed in this case is more

14    experienced class counsel.

15        Now I submit, we could get into an argument about

16    each of these three reasons, but let me just deal with

17    them briefly.  There is no requirement that a class

18    plaintiff in this type of case, unlike perhaps a

19    securities case, be a large company with a certain level

20    of revenue.  That is not going to be a basis upon which

21    to attack whether the Arkansas plaintiffs are adequate

22    class representatives.

23        We are, the second point the forum selection clause,

24    we are fighting with Google in the pleadings as to

25    whether that forum selection clause is enforceable.  We

1    think that would prejudice the class.  The California

2    plaintiffs apparently concede that forum selection clause

3    is enforceable.

4        And then with regard to not being allowed to

5    participate in mediation, and this goes actually to the

6    need or the request to disclose the terms.  Under the

7    Arkansas law applicable to mediations and the mediation

8    agreement entered into with the mediator in California

9    and the term sheet entered into between plaintiffs and

10   Google, plaintiff's counsel were under an affirmative

11   obligation to maintain confidentiality.  It was in our

12   judgment, and I don't think anybody would question this,

13   I would suspect Google would confirm it today, that if we

14   had answered the questions posed to us by Mr. Carter we

15   likely would have blown the settlement.

16       Now that is not say they are not ultimately entitled

17   to know every detail of the agreement that we present to

18   the Court. It will be made public.  There will be a

19   public hearing on it.  People can come in and argue about

20   whether it is a fair settlement and in the interest of

21   the class.  But that is for another day.

22       Now as I say, since the filing of their motion to

23   intervene there has been an announcement and Mr. Carter,

24   I think described it well, as the generalities about the

25   settlement.  That is as much as we can say to the public

1    and to the intervener's counsel at this point, because as

2    I said, we are bound by confidentiality agreements.  And

3    we will be filing the motion for preliminary approval of

4    the settlement.   It will at that point become public in

5    the near future.

6        So let's move to what they are asking today.  They

7    are saying we have to intervene.  And to me, Your Honor,

8    it comes down to are they correct in contending, is it

9    supported by the record that the plaintiffs' counsel in

10   the Arkansas case and plaintiffs in the Arkansas case do

11   not adequately represent and have not adequately

12   represented the interest of the class.  And I say that is

13   not the question that really ought to be decided today.

14   That's why the motion to intervene is premature.  You

15   will be presented with a settlement and one of the

16   questions that you will be asked to rule upon is is the

17   settlement in the best interest of the class, including

18   AIT.   That would include a finding that plaintiff's

19   counsel adequately represented the interest of the class

20   and that class representatives served as an adequate

21   class representative.  If you reach that point and if you

22   reach the approval of the settlement, then you will by

23   definition have rejected their contention that they have

24   to prove to intervene that plaintiffs in Arkansas and

25   counsel in Arkansas do not adequately represent the

1    interest of AIT.

2        So it is sort of a circuitous issue, Your Honor,

3    because they don't yet have all of the facts about the

4    settlement.  They will at the appropriate time.  At that

5    point they can challenge, if they wish, the adequacy of

6    the settlement, adequacy of representation, but only at

7    that point as an objector.  At this point an

8    intervention, in our view, has a significant downside and

9    that is what role would they have in the case.  Would

10   they be deemed co-counsel that would be engaged in

11   drafting the final settlement agreement with Google's

12   attorneys.  What role would they have in the claims

13   against the other defendants because they have not

14   asserted a claim in their complaint in intervention

15   against Yahoo, for example, or others.  And really what

16   they are here about, Your Honor, and I think it became

17   clear in Mr. Carter's presentation, they just object to

18   the terms of the settlement as they know them.  Maybe

19   once these see all the facts they will have a different

20   view.

21       But the other downside, Your Honor, in terms of the

22   complexity and dealing with the other issues of the

23   Court's preview as far as the schedule is, and I want to

24   be careful how I say this because I don't want anybody to

25   use this transcript to say that I think there is a basis

1    for removal to federal court.  But I think I know a

2    little bit about the way defense lawyers think and

3    operate and somebody might say well this complaint in

4    intervention which has now been filed after the commence,

5    after the effective date of the federal law adds a new

6    party, adds a new claim under California law.  And they

7    might argue that has commenced a new action and we here

8    we go back to federal court.  And that is not, in our

9    view, in the best interest of the class.  And yet

10   California counsel, they are representing the putative

11   class in California, they apparently recognize that risk

12   but in their brief they call it, it would be bad faith.

13   This is their reply brief, bad faith.  It is even better

14   than that, a hypothetical bad faith attempt by the

15   remaining defendants.  I think it is much more than

16   hypothetical.  And that alone in my view, Your Honor,

17   even though I don't think it would give defendants an

18   opportunity to remove it under the Eighth Circuit law

19   applicable in another circuit.  Creative lawyers may come

20   up with an argument to remove it based upon a complaint

21   in  intervention which adds a new party and a new cause

22   of action under California state law.

23       So in conclusion, Your Honor, and I will be happy to

24   entertain any questions, we don't believe at this stage

25   of the litigation that there is, it is not the

1    appropriate time to determine whether adequacy of

2    representation is occurring.  That can await approval of

3    the class action settlement.  At that point AIT can

4    object, come before the Court.  I don't believe that

5    would preclude an appeal if their objection is overruled

6    and the class action settlement is approved.

7       Your Honor, I, you know, reading the briefs one is

8    tempted to get in comparisons of California class

9    counsel's theories versus the Arkansas class counsel's

10   approach, whether unjust enrichment is not, I think it

11   suffice to say and I don't -- I want to speak on behalf

12   of the group other than the speaker.  I don't think there

13   is any doubt in anybody's mind in this room that that

14   group of plaintiff's lawyers is very sophisticated.  They

15   have been very successful.  And to suggest that someone

16   other than them is needed at this point, let me just say

17   I don't think it is warranted.  And I don't want to be

18   any stronger than that.

19      This group can adequately represent the interest of

20   the class, including AIT.  If the Court is presented with

21   evidence in April to the contrary, or at the final

22   hearing, the Court may make that determination, but

23   presumptively, Your Honor, I think this group, by all

24   accounts, is entitled to the view that they are

25   adequately representing the class.  And all that really

1    has been said about the settlement is that it is ninety

2    million dollars.  That would be the largest class action

3    settlement in the history of this state, if my history is

4    correct.  There may be other angles to it that give it

5    even greater value.  That will have to be fleshed out,

6    but with all due respect to the interveners and their

7    counsel, now is not the time to intervene in this case.

8    Let it take its course through the schedule proposed by

9    the Court.  Thank you, very much.

10        MR. SILBERT:  Your Honor, may I?  David Silbert on

11   behalf of Google.  May I be heard?

12        THE COURT:  Yes.

13        MR. SILBERT:  Your Honor, I would like to address

14   the issue briefly and say that based on what I have heard

15   today and read in AIT's filing including in its reply

16   brief that we received last night, Google does object to

17   AIT's intervention.

18        It is very clear, I think, that AIT is not

19   intervening for the purpose of litigating this case in

20   this forum.  In fact, AIT has expressly taken the

21   position that it has no right to litigate this case in

22   this forum.  It agrees that this is the incorrect forum

23   in which to bring this lawsuit.  So instead, I believe it

24   is quite clear, based on Mr. Carter's comments this

25   morning and on the pleadings that AIT filed, that their

1    sole purpose in seeking to intervene is to challenge the

2    settlement that has been reached between Google and the

3    class plaintiffs in this action.

4        I believe that most of the comments that Mr. Carter

5    made this morning were directed to the adequacy of the

6    settlement and the perception of AIT, at least at this

7    time, that the perception does not adequately protect the

8    class' interest and potentially AIT's interest.

9        Well, there is procedure under Arkansas law for

10    challenging a settlement. That procedure is for AIT to

11    object to the settlement at a fairness hearing, which

12    will be held specifically for that purpose and based upon

13    full disclosure of the facts of the settlement. But

14    under my reading of Arkansas law, the law is equally

15    clear that intervention by a class member is not an

16    appropriate procedure in order simply to challenge a

17    settlement. And I believe the most important case for

18    the Court to consider in deciding this motion is the

19    Ballard case, which was cited by AIT in support of its

20    motion for intervention, an Arkansas Supreme Court case,

21    of course.

22        I will note that none of the three principal cases

23    on which AIT relies, that is the Milberg Weiss case, the

24    Ballard case, and Luebbers case, in none of those cases

25    was intervention permitted. In fact, it was denied in

1    each of those cases and that action was upheld by the

2    Arkansas Supreme Court.  I will say that the Lubbers case

3    and the Ballard case, while two different decisions,

4    arise out of the same lawsuit.  But in each of those

5    lawsuits intervention was denied by the trial court and

6    again that denial was affirmed in opinions by the

7    Arkansas Supreme Court that said the denial of

8    intervention was correct and not an abuse of discretion.

9        The reason that I believe the Ballard case is

10    particularly apt and appropriate is that, as I read it,

11    that is that case makes quite clear that it is not

12    appropriate to simply wait while a separate lawsuit

13    progresses to in the words of that opinion:  Sleep on

14    your rights and decide to simply watch and see how the

15    lawsuit evolves and then when that lawsuit takes a turn

16    that a party who is not a party to the suit may be

17    displeased with, at that time to try to intervene and

18    then change the course of that lawsuit.  And again, the

19    Ballard decision affirms the trial court in finding that

20    this is too late and the Supreme Court decision says

21    again to the intervening party you slept on your rights,

22    you had your own lawsuit, you watched and waited while

23    this lawsuit evolved, and then when something happened in

24    this lawsuit that you didn't like, you moved in to

25    intervene and try to change things.   That Supreme Court

1    said, agreed with the trial court, simply waited too long

2    and too late procedurally to intervene.

3         As I understand AIT's motion that has been presented

4    in their papers and I believe presented more clearly here

5    today, and again, they are not seeking to intervene in

6    this case and litigate this case in this forum because

7    they believe it is an inappropriate case to bring here.

8    Quite the opposite, they have taken the position

9    expressly in their papers that this is not an appropriate

10   case, that there is a valid contractual forum selection

11   clause that bars them, in their view, the plaintiffs as

12   well, but they agree bars them from even bringing this

13   case that they brought.  So where their sole purpose is

14   to effect, or effectively challenge the settlement, again

15   as I read Arkansas law, it is quite clear that is not an

16   appropriate basis to intervene.

17        And of course, again Arkansas law provides a full

18   panoply of rights to any party that wishes to take the

19   position that AIT does wish to take, but the way that it

20   provides that right is by allowing them to act as an

21   objector at a fairness hearing which, of course, AIT

22   would, and anyone else who is interested in this

23   litigation, will have the opportunity to do.

24        I will make just a few other comments briefly and

25   Mr. Crass touched on these, but I will support what he

1    says. It is not true that any disposition in this case
2    would adversely affect AIT in any way. AIT as Mr. Carter
3    noted, has its own lawsuit against Google. AIT believes
4    that it has a claim against Google that is worth upwards
5    of a quarter million dollars, its own independent claim.
6    Now of course, Google has its own position on, but that
7    is AIT's position. And AIT will be perfectly free, as
8    will any of the other class members, to opt out of
9    settlement, if this Court ultimately approves the final
10   settlement, and litigate its own claims without being
11   bound or affected in any way by a settlement that is
12   approved by this Court. So AIT has no individual
13   interest that will be compromised in any way by anything
14   that happens in this court.

15       Now I understand that AIT also takes the position
16   that it wants to protect the class' interest because it
17   views itself as a representative class. But again, of
18   course, the way to do that, if it believes there is a
19   need to do that, is simply to object at the fairness
20   hearing if it thinks an objection is appropriate. And
21   this Court will have a full opportunity to review the
22   settlement once its terms are fully disclosed and after
23   and upon full briefing at a fairness hearing. And so the
24   class' interest will, of course, be fully protected as
25   well. Your Honor is going to be sure of that.

1       Just two finally comments and then I will answer any

2    questions the Court may have.  I want to address this

3    point of confidentiality and also the sort of general

4    message, I believe, of some of AIT's comments to the

5    effect that the settlement is inadequate.

6       With regard to confidentiality, I do want to confirm

7    what Mr. Crass said, that the parties have signed a term

8    sheet.  We are, as he put it, feverishly in the process

9    of creating final dockets that we will present the Court

10    soon for preliminary approval.  It was our judgment in

11    signing the term sheet that while we wanted to and we

12    have disclosed the principal terms of the settlement, we

13    did not want to get into talking about every single

14    detail of things that is in the term sheet until there is

15    final agreement that the parties have signed that

16    memorializing all of those terms.  And we therefore

17    provided in the term sheet that other than disclosing the

18    principal terms, the ninety million dollar fund and so

19    forth, that the remainder of the term sheet would be

20    confidential until there is a final agreement.  That is

21    part of the parties' agreement and we felt that that was

22    the appropriate thing to do until there is a final

23    document and then, as Mr. Crass said, by all means AIT,

24    and the Court, and the rest of the world will be able see

25    it, scrutinize it, learn everything there is to know

1    about it, about that settlement agreement.

2        But in any event, it is correct at this point that

3    while we have disclosed the principal terms, we have

4    required that the other details of the term sheet remain

5    confidential.

6        I finally simply wanted to register on the record

7    our vehement disagreement with AIT's counsel in its

8    position and AIT in its paper with its position that the

9    settlement is inadequate based on the merits of the case.

10   And I don't want to say more than that here because this

11   is not the appropriate time to do that.  There will be a

12   fairness hearing.  AIT may be an objector and that is

13   the time to discuss, analyze, and talk about the merits

14   of the settlement, but I simply didn't want to let those

15   comments pass without saying that on the record that we

16   disagree with them.

17       Other than that, unless Your Honor has any questions

18   I will conclude.

19       THE COURT:  No questions at this time.  Thank you,

20   sir.

21       MR. CARTER:  Brief rebuttal, Your Honor?

22       THE COURT:  Yes, sir.

23       MR. CARTER:  I have heard nothing, Your Honor, quite

24   frankly, that addresses the requirements of Rule 24.  Now

25   both the plaintiffs and now, for the first time, Google

1    are trying to dictate what options we take, which I will

2    address in a minute as being procedurally our own

3    position, but they don't tell this Court that we don't

4    meet the three requirements.  They don't tell this Court

5    that we don't have an interest in this litigation.  They

6    don't tell this Court that our interest won't be impaired

7    if we are not allowed to intervene.  And they don't

8    address the very detailed representation concerns that we

9    have raised.  And it is not just about the settlement.

10   We have been litigating this class, this claim on the

11   West Coast for some time.  And, yeah, we may have

12   problems with the settlement process, but we may also

13   think it is in the best interest of AIT to continue

14   litigation.  We don't know yet.  We haven't been allowed

15   to the table.  So with respect to the requirements of

16   rule 24, we meet them.

17        Now on this issue of the timeliness of the motion to

18   intervene, I am a little perplexed.  Mr. Crass, on behalf

19   of the plaintiffs, says that it is premature.  It is not

20   time yet to file a motion to intervene.  And now Google,

21   out of the blue for the first time, without any filing

22   says it is too late to file a motion to intervene.  And

23   the, where this is very carefully being moved to position

24   AIT is that well it is premature now, you are too early,

25   but the truth of matter, Your Honor, is that in the

38

1     Ballard case, Ballard v Garrett, and in the other cases

2     that were cited where intervention was denied, it was

3     denied on timeliness issues because the interveners, or

4     the movants, waited until after the settlement had been

5     consummated, after the notice of the fairness hearing had

6     gone out, and, yeah, they waited until the last minute to

7     come in.  So that is where we are between a rock and a

8     hard place.

9          We filed the motion to intervene now because there

10    is authority from the Arkansas Supreme Court that says if

11    you wait until after the court has sent out notice,

12    scheduled the hearing, there is timeliness issues.  But

13    no one has raised in the briefing timeliness at all and

14    that's why I didn't argue in the initial argument this

15    morning.

16         So we have timely filed the motion to intervene and

17    if Your Honor listens to the plaintiffs and says it is

18    too late, well then we are further down the road in the

19    process.  Settlement is presented to this Court and

20    notice goes out and there is a fairness hearing, the

21    Supreme Court has indicated it would be untimely then.

22    So you know, we are in trouble either way we go if you

23    listen to them.  And clearly, no one has contested the

24    statement as a matter of law that if Your Honor doesn't

25    allow us to intervene we are not going to have standing,

1    according to the Haberman opinion and one or two others,

2    to appeal the settlement order.

3        Now with all due respect to counsel, it is our

4    option.  The Supreme Court has said it is our option, and

5    I will refer the Court specifically to the Haberman

6    opinion, at 884 SW2d 262.  It is cited in our briefing

7    where this issue was taken up and I think that's one of

8    the cases where they address the lack of standing to

9    appeal, but here is what the Supreme Court said:  We

10   point out though that an unsatisfied class member is not

11   without alternatives.  An unsatisfied class member's

12   options are to move to intervene as a matter of right,

13   collaterally attack the settlement approval by filing a

14   separate suit challenging the adequacy of the class

15   representation, or he may opt out.

16       Now I understand that the plaintiffs, I understand

17   that Google would like to dictate to us which alternative

18   we chose to take, but the Arkansas Supreme Court says we

19   can decide and that one of our options is to intervene as

20   a matter of right.  We have done that in a timely matter

21   and we have met the requirements of the rule.  So the

22   notion that we should simply wait and object and get in

23   line with others on the settlement is an option, but it

24   is ours.  It's our decision, subject to the Court's

25   ruling obviously that we have met the requirements of

1    Rule 24.

2         On the removal issue, I, like a lot of lawyers in

3    this room who have been at several hearings in other

4    cases, class actions that were filed shortly before the

5    effective date of CAFA that have gone on removal to

6    federal court and I have been at those hearings.  I have

7    listened to the repeated arguments about how the

8    plaintiffs filed before the effective date but they

9    didn't get service here and there and certain things

10   didn't happen and that CAFA should therefore apply and

11   that has been repeatedly rejected by Judge Barnes, by the

12   Eighth Circuit.  So I mean obviously I can't control what

13   somebody may want to argue, but I don't think any of us

14   in this courtroom who have been up there and seen how it

15   has gone so far wants to be standing in front of Judge

16   Barnes arguing that CAFA somehow has invoked in a case

17   that has already been decided was commenced before the

18   effective date of CAFA.  So we view that as a red

19   hearing.

20        Lastly, it is not about the counsel, Your Honor.

21   These are good lawyers.  The rule addresses adequacy of

22   representation by the plaintiffs.  I would point out

23   however, that in reversing a trial court for denying a

24   motion to intervene the Arkansas Supreme Court in the

25   Frank versus Barker case cited in our reply, did say that

1    on remand because counsel for the class representative

2    was opposing the entry into the case of the intervener

3    that on remand it would be appropriate for the trial

4    court to allow that intervening party to have separate

5    counsel.  So again, nothing I have said is meant to

6    impugn the ability or the integrity of any of my friends

7    on the that side of the case.  It is simply a matter of

8    whether these plaintiffs are adequately representing our

9    interest and they simply have not rebutted our concerns

10   about the different situation we may be in that is not

11   being addressed particularly with respect to the timely

12   objections to our bills.  Any questions, Your Honor?

13        THE COURT:  Not at this time, Mr. Carter.  Thank

14   you.  Let me, I do have some questions, I didn't want to

15   require counsel to remain at the podium, but I know it is

16   in the documents here and I know it was some time after

17   the February deadline for CAFA, but when was the

18   California lawsuit filed by AIT?

19        MR. CARTER:  It was in May or June of last year

20   after the effective date.

21        MR. COCKRELL:  June 24.

22        MR. CRASS:  I think it is in the record, Your Honor,

23   as an attachment to their motion.

24        THE COURT:  In fact --

25        MR. CRASS:  June 24th of '05.

 1            THE COURT:  -- one of the original lawsuits was not

 2     in the name of AIT.  It was in the name of Click Defense?

 3            MR. CARTER:  That's correct.

 4            THE COURT:  If I am not mistaken from reading your

 5     motions and so forth.  And then some time subsequent to

 6     that, AIT filed a motion to substitute and at least in

 7     somebody's, in the pleadings that I read you got, have

 8     you gotten a tentative approval for that?  Seemed like I

 9     saw that notice.

10            MR. CARTER:  They have been installed as the

11     representative party.

12            THE COURT:  Which was in what, in January of this

13     year that you actually got an order.

14            MR. CARTER:  Not sure, Your Honor, but we will make

15     that information available to the Court.

16            THE COURT:  I know that there is a couple things

17     noted and I am not making a decision on the timeliness

18     issue because we are prior to a settlement, but I am

19     interested in if AIT, as argued by counsel, was keeping

20     up with their, what the number of times they thought they

21     had been a victim of click fraud and knowing.  And it may

22     be, as I read your pleadings, that I know the answer to

23     this question, but you were keeping up with that or AIT

24     was keeping up with that, and yet AIT didn't get involved

25     in that until some time much later than when CAFA went

1    into effect.  And the lawsuit here was filed in February

2    and the original lawsuit wasn't filed by AIT but by Click

3    Defense.  So it waited some, so if we take, there is some

4    credence to the arguments of plaintiffs.  I see a little

5    bit because there is a pretty good lag time before AIT

6    gets named as a party in the California case and when

7    this case was initiated in state court before you got

8    involved here.

9        And it is not like, I don't think we live in a

10    vacuum here.  When this lawsuit was filed it became

11    public knowledge on a national level pretty quick.  So I

12    think there was a pretty good lag time there before AIT

13    got involved, especially with the fact that they were

14    keeping up with their records and had some idea, as

15    argued by counsel, that they had, know what they lost as

16    far as monetarily.

17        If, and I understand what Mr. Carter said and I

18    certainly believe, I certainly believe his statement

19    because Mr. Carter practices in my court, but from the

20    pleadings involved, Counsel, if adequacy of plaintiff's

21    counsel is not a question, AIT sure spent a lot of time

22    in your motion on how, commenting on how experienced the

23    counsel for AIT is versus and including a list of

24    biographies and list of cases that you were successful in

25    and a list of your clients.  If that is not what you are

1   saying, it certainly intimated pretty strongly in your

2   pleadings.  Those speak for themselves.

3         I do understand the argument though by AIT's counsel

4   that you are not, maybe that is not your intention, but

5   you spent some time on the fact of the size of the

6   plaintiff's businesses as that are the representative

7   plaintiffs in the Arkansas state court case.  And spent

8   some time in commenting upon the sophistication of AIT in

9   the business and I certainly  understand the advantage of

10   that.  But I think also counsel would have to admit that

11   Lane's and the other defendant, or plaintiff mentioned

12   here, are not going to be arguing this case presenting

13   the case.  We have already had the discussion of other

14   hearings if this matter goes to trial there is going to

15   be a lot of expert testimony and it is not going to be an

16   expert from Lane's Toyland or Investigative Services

17   here, so that sophistication may not be held by the

18   plaintiffs individually, but that doesn't mean that they

19   won't have the requisite witnesses to present their side

20   of the case when it comes to trial.  I am not basing that

21   just upon this case, but in other cases that are much

22   simpler than this where the parties hire expert

23   witnesses, such as engineers and accountants and so

24   forth.  So it is not uncommon for the named parties to

25   not have the sophistication to present their case or have

1   the requisite knowledge to argue business technicalities.

2   They often depend upon expert witnesses to present their

3   side of the case, which I anticipate that would occur in

4   the case upon it going to trial.

5       Getting to Rule 24, one of the things it seems clear

6   on here is that AIT definitely has an interest in this

7   case and they have an interest that is represented by the

8   claims made by the plaintiffs in this case.  I think both

9   parties have stated that in your pleadings.  One other

10  thing that I did want to mention and that is that in

11  something I noticed in reading the pleadings that AIT, in

12  their pleadings, spent a lot of time on talking about the

13  issues that they were going to present.  I noticed, and

14  counsel has commented upon this, and that is, as I

15  understand, when that case was initiated in California

16  there were four claims or causes of action.  There was

17  the unjust enrichment, negligence, contract, and then the

18  statutory business code in the State of California.

19  Whether that was done by agreement or whether lost on the

20  merits, probably a combination of two is the way I read

21  the pleadings in the case, but unjust enrichment and

22  negligence went out pretty quickly on the motions to

23  dismiss.

24      There was a ruling by the court that did not allow

25  AIT or the Click Defense at that time to file a response

1   because they didn't meet the deadline, or at least that

2   is noted in the matter.  And then maybe the parties

3   subsequently got to agreement as to the issues.  But as I

4   understand, it the two issues that remain in the

5   California Federal Court are contract and the California

6   business code issue over there.  And if counsel proceeds

7   or relies upon the contractual issue over there, I guess

8   it remains to be seen how the court would rule on the

9   proper forum.

10  But now getting back to rule, I went around the horn

11  there, but there was a point there that came to mind I

12  wanted to touch on.  In Rule 24, as I mentioned I think

13  the interest, there is a representative interest there

14  that is presented in this case and as evidenced by the

15  claim of AIT.  They have an interest that is involved in

16  this case.  And whether or not if this case goes forward

17  over here, if you are not allowed to intervene the

18  question is will your interest be impaired or will your

19  ability to protect that interest be impeded if you are

20  not allowed to intervene.  That is a question that the

21  Court will have to address in weighing your arguments

22  here this morning, and also the question of adequate

23  representation.

24  And as counsel noticed in A 1 and A 2, there is an

25  either or, but once you get down to A 2 and there is

1    some, it is an and clause as you noted in there where all

2    those have to come together and if there is something

3    missing you may not have met your burden.  Of course,

4    counsel has also argued 24 (b) regarding permissive

5    intervention and all of that I think is going to get into

6    a big part of this is whether or nor your interest is

7    going to be protected and whether your interests are

8    properly represented here before the Court and that is

9    the issue that I will be dealing with.

10        And I went around the horn on several things there,

11    but that is just some of the things that I noted in your

12    pleadings here today.  But I do think to be honest with

13    counsel that, you know, in your pleadings you spent a lot

14    of time on adequacy of representation from a legal

15    standpoint rather than an interest standpoint is what I

16    noticed in that.

17        As I mentioned, I anticipate trying to get you an

18    answer on this in the next few days because I know that

19    we have other hearings and you may have actions or

20    pleadings that you want to file based on whatever the

21    Court's ruling may be.  I believe that's all I want to

22    comment about the motion here this morning, Counsel.

23        One thing I do want to bring up.  So that especially

24    for counsel from out of town that hasn't dealt with this

25    Court before.  I heard it expressed to me here within the

1    last week that some parties might be concerned about what

2    my feelings are if you appeal any of my decisions.  I

3    don't care whether you appeal my decisions.  Let me be

4    real clear and honest with counsel here.  If you want to

5    appeal my decision that doesn't hurt my feelings at all.

6    I won't be, I won't feel like I have been insulted.  I

7    never have taken that position.  I don't expect to in the

8    near future.  I might be upset by what the appellate

9    court has to say, but I am not, I am not upset by whether

10   any party ever appeals any ruling this Court makes.  So

11   please don't feel like you need to avoid my office if you

12   ever appeal any of my orders here.  You are free to come

13   in at any time.  I am not offended.  Like I said, I might

14   be offended by the appellate court based upon their

15   ruling if they don't agree with me, especially I believe

16   they are wrong.  But having any decision I have appealed

17   does not insult me or concern me whatsoever.  It never

18   has.

19       I am going to give you my best shot and whatever

20   that is you got it and if it is, you don't feel

21   comfortable with it or don't like it, that's why we have

22   an appellate court for you to go up and let them listen

23   to it, have the benefit of six or seven people listening

24   to your argument and the benefit of all their paralegals

25   and their combined knowledge taking six months to make a

1   decision, you know, without any ninety day rule coming

2   down on top of them, as we trial judges do.  And who

3   operate without paralegals and other judges to sit with

4   them.   So I am, that doesn't offend me at all, so please

5   don't worry about that.

6       MR. CARTER:  Your Honor, there is something I

7   intended to tell you that goes along with what you just

8   raised from the bench and I honestly can't remember if I

9   did.  On at least as a procedural issue, on the issue of

10  whether our interest is impaired, that I understand the

11  Court will rule on, if I didn't tell I am telling you

12  now, that Google has filed a motion to stay the

13  California action.

14      THE COURT:  Yes, you mentioned that.

15      MR. CARTER:  That is pending that would shut that

16  down if it is granted.

17      THE COURT:  Okay.  So has that motion been acted on

18  by the Court yet?

19      MR. CARTER:  Not yet, Your Honor.

20      THE COURT:  Just pending.  All right.  So at this

21  point in time unless that stay is put in place you still

22  have a certification hearing scheduled in California in

23  May I believe it is?

24      MR. CARTER:  Correct.

25      THE COURT:  All right.  Any other issues that

1    counsel wishes to address today or have questions of the

2    Court?  Okay, Counsel.   Thank you.

3

4        (Proceedings Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        REPORTER'S CERTIFICATE

2          I, Jewell Arthur, Official Court Reporter for the Circuit

3   Court, Eighth Judicial Circuit South of Arkansas, certify that

4   the above proceedings were recorded in the case of Lane's

5   Gifts and Collectibles, et al versus Yahoo! Inc., et, Miller

6   County Circuit No. CV-2005-52-1, March 14, 2006, before the

7   Honorable Joe E. Griffin, Circuit Judge thereof, at Texarkana,

8   Miller County, Arkansas, that said recording has been reduced

9   to a transcription by me, and the foregoing pages numbered 1

10  through 51 constitute a true and correct transcript of the

11  proceedings held to the best of my ability, along with all

12  items of evidence admitted into evidence.

13         WITNESS MY HAND AND SEAL as such Court Reporter on this

14  15th day of March, 2006.

15

16

17                            _____

18                            JEWELL ARTHUR, Court Reporter

19

20                              **Jewell Arthur**
                             **Certificate #217**
21                        **Arkansas Supreme Court**
                          **Certified Court Reporter**

22

23

24

25

**EXHIBIT "2"**



**Joe E. Griffin,** Judge
Miller County Courthouse
Texarkana, Arkansas 71854
Ph. (870) 774-2421
Fax (870) 772-4680

COUNTIES:
LAFAYETTE
MILLER

**OFFICE OF THE CIRCUIT COURT**
EIGHTH JUDICIAL DISTRICT - SOUTH
STATE OF ARKANSAS
DIVISION ONE

March 31, 2006

TO ALL COUNSEL OF RECORD

Re:    Advanced Internet Technologies, Inc. Motion to Intervene in:
       Lane's Gifts and Collectibles, L.L.C. et al vs. Yahoo, Inc. . . .
       Google, Inc. et al; Miller County Circuit Court No. CV-2005-052-1

Dear Counsel:

After careful review and consideration of the Motion to Intervene filed by Advanced
Internet Technologies, Inc. (AIT), it is the Court's decision that said Motion to Intervene should
be denied. In reaching this decision, the Court has concluded the following:

That this class action complaint was filed by the Plaintiffs in state court in February 2005,
prior to the effective date of the Federal Class Action Fairness Act of 2005 (CAFA). Plaintiffs
filed this action against the Defendants, including Google, Inc., who provide internet search
services and sell pay per click (PPC) advertising to on-line advertisers. Plaintiffs sued on
theories of breach of contract, unjust enrichment and civil conspiracy, alleging that Defendants
unfairly profited by collecting PPC advertising revenues that were not generated by actual
consumer click-through advertising. The putative class includes "any and all persons and/or
entities who were overcharged for PPC advertising".

Subsequent to the filing of this Complaint, Defendant Ask Jeeves, Inc., filed to remove
this action to Federal court based on CAFA. After this removal action was presented to the U.S.
District Court for the Western District of Arkansas, the U.S. District Court heard the Plaintiffs'
motion to remand on May 20, 2005, and issued a remand order on July 11, 2005. Ask Jeeves,
Inc. immediately filed an interlocutory appeal to the U.S. Eight Circuit Court of Appeals, and on
September 8, 2005, the Eighth Circuit denied the interlocutory appeal and returned the case to
this Court's jurisdiction.

While the issue of federal court jurisdiction was pending in this case, another internet
advertiser, Click Defense, Inc. (CDI), filed a similar nationwide class action lawsuit against
Google, Inc. on June 24, 2005, in the U.S. District Court for the Northern District of California.
CDI alleged that Google had overcharged it for PPC advertising and sued on theories of breach

of contract, negligence, unjust enrichment and unfair business practices in violation of section 17200, et seq. of California Business and Professions Code. (See cause number 5:05-cv-02579-RMW, Click Defense, Inc. vs. Google, Inc. et al, U.S. District Court, N. Dist. Cal.). CDI sought certification of a nationwide class of "all persons and/or entities that paid moneys to Google for advertising through Google's "Ad Words' program".

After the filing of its lawsuit in federal court, CDI had to face early motions to dismiss filed by Google. Following that Court's consideration of the motion to dismiss, the federal court dismissed two of CDI's claims, specifically negligence and unjust enrichment on September 14, 2005. That left only the theories of breach of contract and the statutory unfair business practices claims. Following this dismissal order, CDI withdrew from the suit and asked to substitute AIT as the class representative on December 7, 2005. It is understood that AIT received a ruling on or about January 13, 2006, which allowed its substitution as the class representative in the U.S. District Court case in California.

As CDI and AIT proceeded with dealing with the effects of the dismissal order in the California case, the parties in this case were addressing case management issues which led up to this Court's ultimately issuing a Protective Order. Shortly after the Protective Order was issued, the Plaintiffs and Defendants, Google, Inc. and Ask Jeeves, Inc., filed a Joint Motion to Abate the Scheduling Order and to Refer the Case to Mediation. This Court granted the Motion and ordered the specified parties into mediation on January 9, 2006. On February 28, 2006, the parties filed another Joint Motion to Extend the Abatement of these proceeding as they has reached a tentative agreement regarding settlement. Approximately ten days before this motion was filed, the Intervenor, AIT, which is represented by the same counsel as CDI previously, filed its Motion to Intervene herein on February 17, 2006. This Motion to Intervene was presented to the Court for its consideration on March 14, 2006, as the Court had previously indicated to the parties that it would conduct a preliminary approval hearing on Plaintiffs, Google, Inc., and Ask Jeeves, Inc. announced settlement on April 3, 2006.

Before the Court addresses the issues of law connected with this Motion to Intervene, it is important to note that both this case in the Arkansas state court and the Intervenor's original case in the federal district court of California were not being pursued in a vacuum. From this Court's own observations and from the statements of counsel throughout these proceedings, it was well known throughout the national business community that these lawsuits were being pursued against Google, Inc., one of the two largest internet advertising providers, along with the other Defendants from the time that these cases were filed. Most of the discussions surrounding these cases has centered around the term "click fraud", and it has been reported in the Wall Street Journal as well as other notable newspapers and nationally distributed publications. Thus, it is the Court's opinion that the existence of these cases is of no surprise to either party in this cause of action.

In considering AIT's Motion to Intervene under Rule 24 of the Arkansas Rules of Civil Procedure (ARCP), whether by intervention of right or by permissive intervention, the Court must first make a determination as to whether the motion has been timely made. In determining the timeliness of the Motion to Intervene, the Court should consider three factors: (1) how far the proceedings have progressed; (2) any prejudice to the other parties caused by the delay; and (3) the reason for the delay. Ballard et al vs. Garrett et al; 349 ARK. 371, 78 S.W. 3d 73 (2002).

While reviewing the facts in this case, the Court must look at the totality of the circumstances. This action in state court has been pending since February, 2005. The

Intervenor's case was filed four months afterwards on June 24, 2005, in the federal district court of California. No reason has been given for the Intervenor's, AIT's, delay in filing their Motion to Intervene, and no reason has been given as to why AIT did not join in the Arkansas case from the beginning other than AIT's, formerly CDI's, counsel had strategically and tactically different theories and opinions as to how to proceed with their claim against the Defendant. That is a choice which the Intervenor was free to make. However, AIT has not presented this court with any justifiable reason for delaying their Motion to Intervene.

In addition to the reason for delay, the Court must consider how far the proceedings have progressed and whether any prejudice to the other parties might occur. Before AIT filed its Motion to Intervene herein, it was known that this case had been pending for at least one year, the issues of state jurisdiction versus federal jurisdiction had been adjudicated, the parties had addressed the questions of case management and protective orders, and the Court had ordered mediation to take place between the Plaintiffs and separate Defendants, Google, Inc., and Ask Jeeves, Inc. Pursuant to statements of counsel and the allegations within the Motion to Intervene, AIT was aware of the mediation process taking place, and attempted to inject itself into the mediation discussions between the Plaintiffs herein and Google, Inc. At that point in time, AIT had not intervened herein and was not a representative party in this case; therefore, they were not included in the mediation process that was already ongoing. Approximately ten days after the Motin to Intervene was filed, a motion was filed jointly by the Plaintiffs and Google, Inc. wherein the parties indicated that a tentative settlement had been reached. Thus, AIT's Motion to Intervene was not filed until the claim against Google, Inc. had been virtually settled. Whether or not the parties had litigated all of the issues or ventured deep into discovery is not compelling or determinative of this issue. The point is that the parties were in the late stages of reaching an agreement which would resolve this claim as to Google, Inc. and Ask Jeeves, Inc. Therefore, AIT's Motion to Intervene was not filed until the original parties had reached a tentative resolution of their dispute subject only to receiving the Court's approval.

Next the Court must give consideration as to whether the other parties might be prejudiced by any delay. It is evident from the arguments of counsel and AIT's pleadings that some delay would occur if AIT were to be allowed to intervene in this cause. Counsel for AIT has made it clear that they do not agree with Plaintiff's counsel as to what approach to follow in the prosecution of this case; and it is also of deep concern to this Court that if AIT were allowed to intervene that further interlocutory appeals would occur regarding the application of CAFA and other issues. This would inevitably create delays and increase the costs of litigation; thereby undermining the objective of the ARCP, specifically, Rule 1 which is to promote the orderly and efficient resolution of disputes and "to secure the just, speedy and inexpensive determination of every action." Ballard, supra. Therefore, based upon the above findings, it is the Court's opinion that AIT's Motion to Intervene was not timely filed in this cause.

Had AIT's Motion to Intervene been timely filed, then the remaining requirements of ARCP Rule 24(a) and (b) would have had to have been met as well. AIT did not apply to intervene pursuant to Rule 24 (a)(1). Its Motion to Intervene did seek intervention as a matter of right pursuant to Rule 24(a)(2). In accordance with Rule 24(a)(2), AIT must show that is has an interest related to the property or transactions which is the subject of this cause of action, and that it is so situated that a disposition of this case may impair or impede its ability to protect its interest unless its interest is adequately represented by the existing parties.

AIT clearly has an interest that is related to those interests of the other plaintiffs in this

cause of action. This issue is not questioned by the Plaintiffs. However, will the disposition in this cause impair or impede AIT's interest and is that interest not adequately represented by the existing parties? AIT, although a larger customer, has much the same interests as the current Plaintiffs in that it has sued Google, Inc. for overcharging it for pay-per-click (PPC) advertising. AIT argues that it should be allowed to intervene because it has suffered greater losses and because it is a more sophisticated representative party of the claim. These allegations may be true but they are not sufficient in and of themselves to persuade this court to allow AIT to intervene. At this time, AIT has not shown that the current representative parties cannot protect the interests of AIT or any other member of the putative class or that their interests are not adequately represented. As counsel for AIT stated at the hearing on this motion, counsel for the Plaintiffs is certainly qualified to represent this class and has effectively done so for Plaintiffs in other national class action cases. Although the representative Plaintiffs are not as large a consumer of PPC advertising from Google as AIT, it has been demonstrated to this Court that Plaintiffs have sought and acquired the necessary experts and consultants in this industry to more than adequately assist Plaintiffs' counsel in the prosecution of this cause of action. Therefore, the Court finds that AIT's Motion to Intervene fails as a matter of right under ARCP Rule 24(a)(2).

In considering AIT's Motion to Intervene as a permissive intervention under ARCP Rule 24(b), it is the Court's opinion that said intervention should be denied as untimely and denied because it subjects the other parties to an undue delay as previously pointed out by the Court hereinabove when addressing the general untimeliness of AIT's Motion to Intervene.

In summary, the Court found that much of AIT's Motion to Intervene dealt with the alleged inadequacy of the terms of the proposed settlement between Google, Inc. and the Plaintiffs although the exact terms of that agreement have not yet been presented to the Court. The adequacy of any settlement is not determinative of the party's right to intervene. Any objection to the adequacy of a settlement will be heard at such time as that subject is presented to the Court, and AIT's objection to any settlement was premature at the filing of its Motion to Intervene. In addition, the Court finds that AIT has other remedies if it does not agree with any settlement that might be presented herein. AIT is currently litigating its lawsuit in the California federal district court, and that cause of action is still available for it to pursue if it so chooses. Further, AIT, as a class member, may present its objections to any settlement at a fairness hearing herein, and it may opt out or pursue a separate action to collaterally attack the settlement approval by challenging the adequacy of the class representation.

In accordance with the above findings, it is the Court's opinion that AIT's Motion to Intervene should be denied, and counsel for the Plaintiffs is requested to prepare the precedent reflecting the Court's decision herein.

Respectively,

Joe E. Griffin
Circuit Judge

BY_____

_____ DEPUTY

WANDA DAVIS, CIRCUIT CLERK

06 APR -3 AM 8: 46

**EXHIBIT "3"**

RICHARD L. KELLNER, SBN 171416
FRANK E. MARCHETTI, SBN 203185
KABATECK BROWN KELLNER LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071-3801
Telephone:   (213) 217-5000
Facsimile:  (213) 217-5010

DARREN T. KAPLAN (Admitted *Pro Hac Vice*)
GREGORY E. KELLER (To be admitted *Pro Hac Vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 873-3900
Facsimile:  (404) 876-4476

SHAWN KHORRAMI, SBN 180411
LAW OFFICES OF SHAWN KHORRAMI
14550 Haynes Street, Third Floor
Van Nuys, California 91411
Telephone:  (818) 947-5111
Facsimile:  (818) 947-5121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANCED INTERNET TECHNOLOGIES, INC., a North Carolina corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE, INC.,  a Delaware Corporation, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. C 05 02579  RMW<br><br>Consolidated with<br>Case No. C 05 02885 RMW<br><br>**DECLARATION OF W. DAVID CARTER IN SUPPORT OF PLAINTIFF ADVANCED INTERNET TECHNOLOGIES,  INC.'S ADMINISTRATIVE MOTION TO FILE SUPPLEMENTARY MATERIAL IN OPPOSITION TO DEFENDANT GOOGLE, INC.'S MOTION TO STAY**<br><br>Judge:  Hon. Ronald M. Whyte<br><br>Date Complaint Filed:    June 24, 2005<br><br>Trial Date:  None set |
| STEVE MIZERA, an Individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE, INC.,  a Delaware Corporation, and DOES 1 through 100, Inclusive,<br><br>Defendants. | |

I, W. David Carter declare the following to be true:

1.      I am an attorney licensed to practice in the States of Texas and Arkansas.  I am a partner in the law firm of Mercy Carter Tidwell, L.L.P., counsel for plaintiff Advanced Internet Technologies, Inc.  ("AIT") in the action currently pending in the Circuit Court of Miller County Arkansas (the "Arkansas Action").  I make this declaration of my own personal knowledge, and if called to do so, I would testify to these facts under oath.

2.      On April 3, 2006, I attended the hearing for preliminary approval of the settlement between the Arkansas plaintiffs and Google in the Arkansas Action.  Despite the fact that the hearing was to consider plaintiffs' motion for preliminary approval of a class settlement, no motion for preliminary approval was filed with the Court.  In fact, no proposed settlement was filed by any party.

3.      Counsel for the Arkansas plaintiffs and Google represented on the record that they had not reached a settlement agreement that could be presented for the Court's review, since certain terms still had to be negotiated.

4.      Plaintiffs' counsel requested two additional weeks to continue negotiations prior to submitting a proposed settlement to the Court.  The Court then adjourned the hearing until April 20, 2006.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 3, 2006 in Texarkana, Texas.


        /s/ W. David Carter
        W. DAVID CARTER

DECLARATION OF W. DAVID CARTER IN SUPPORT OF
PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE SUPPLEMENTARY MATERIAL
IN OPPOSITION TO DEFENDANT GOOGLE, INC.'S MOTION TO STAY
Case No. C 05 02579 RMW